## STATE OF INDIANA *v.* ROBBINS.

[No. 27,753.  Filed February 17, 1943.]

126

128

*George N. Beamer,* Attorney General, *Glen L. Steck-ley,* Deputy Attorney General, and *Arthur L. Hart,* of Vincennes, for the State.

*Sherman G. Davenport, Harry R. Lewis, John Rabb Emison, Horace A. Foncannon,* all of Vincennes, and *Carl M. Gray,* of Petersburg, for appellee.

PER CURIAM.—This is an appeal upon questions reserved by the State pursuant to the third clause of

§ 9-2304, Burns' 1942 Replacement, § 2368, Baldwin's 1934. There are eleven assignments of error. The first is covered by the second, which asserts that the "court erred in sustaining appellee Herman Robbins' motion to strike out petition of the state to prohibit attorneys from participating in the cause." Assignments from three to nine inclusive present alleged errors in excluding evidence and will be considered together. The tenth assignment is error in sustaining the motion of appellee, made at the close of appellant's evidence, for a directed verdict of not guilty, and the eleventh is error in instructing the jury to return such a verdict.

A motion to dismiss the appeal has already been denied. In it appellee claims that "no question is presented . . . which can be determined without ▮▮▮ determining a question of fact." Our opinion refutes this claim. The motion asserts that the purpose of the statute, *supra*, is to obtain from this court opinions of law which shall declare a rule for guidance of inferior courts on questions likely again to arise in the trial of criminal prosecutions. To this we assent but we do not agree that "no such questions are presented in this appeal." And appellee's conclusion that "the decision of those presented would, in the main, confuse rather than clarify the law" is a *non sequitur*. If there is confusion, it usually is found in the opinions, not the decisions.

In his main brief appellee also says that the questions are moot. This is true of any question reserved under this statute. But for two-thirds of a century such appeals have been authorized by the Legislature and acted upon by this court. We do not feel justified in refusing to follow these precedents though by so doing we might avoid a quite distasteful task.

Appellee's belief that our decision will require deter-

mination of questions of fact is based upon five cases. In *The State* v. *Van Valkenburg* (1878), 60 Ind. 302, the only assignment was that the court erred in acquitting the defendant. The court did not entertain the appeal because the question apparently required weighing the evidence. In *The State* v. *Hall* (1877), 58 Ind. 512, 513, there was an agreed statement of facts below and acquittal by the court. The only question on the State's appeal was "Whether the evidence was sufficient to establish the defendant's guilt." It may be that the court was correct in concluding that it thus was asked to weigh evidence and decide a question of fact.

But in *The State* v. *Campbell* (1879), 67 Ind. 302, citing as authority the *Hall* and *Van Valkenburg* cases, it seems clear that the court reasoned erroneously to its conclusion. It held that it should not decide whether the trial court erred in giving a peremptory instruction of acquittal on a charge of murder. The propriety of giving the instruction depended upon whether or not there was any evidence tending to establish criminal intent. An appellate court may not decide that the evidence does or does not establish guilt but it may, and in most criminal appeals does, decide whether or not there is sufficient evidence in the record which, if believed, would warrant the jury's decision as to the ultimate fact of guilt. In this kind of an appeal we will not determine the credibility of testimony. This is a part of the jury's function in weighing the evidence and the trial court's function in passing upon a motion for a new trial. But we may review the evidence. Such review is an examination to determine whether there was a total lack of evidence upon some ultimate issue of fact. If so, we say there was no issue for the jury and we decide as a matter of law that the court did not err in giving a peremptory

instruction. If however there was some evidence which, if believed, would support every ultimate issue of fact, we decide as a question of law that the court erred in giving the peremptory instruction. The court in the Campbell case overlooked this distinction. Two other cases are cited by appellee, *State* v. *Overholser* (1879), 69 Ind. 144, and *The State* v. *Phillips* (1900), 25 Ind. App. 579, 58 N. E. 727. The former is founded on the Campbell case, *supra*, and subject to the same criticism. The latter is like the Van Valkenburg case, *supra*, and correctly decided.

We turn now to the questions presented in this appeal and shall consider them in inverse order to the order of assignment.

Appellee, who at the time of the alleged offense and throughout the subsequent proceedings was judge of the Superior Court of Knox County, was indicted in two counts for sodomy under § 10-4221, Burns' 1942 Replacement, § 2603, Baldwin's 1934. The first charged, in the language of the statute, commission of "the abominable and detestable crime against mankind" with a twelve-year-old girl. The second we need not notice. The date of the offense alleged in the indictment was April 18, 1939. Notice of alibi pursuant to § 9-1631, Burns' 1942 Replacement, § 2263-1, Baldwin's Supp. 1935, was filed and the State chose to rely upon June 28, 1939, as the date when the offense was committed. Only two witnesses were permitted to testify, the girl above mentioned and another girl about the same age. The latter testified that they had been in appellee's private office together on a prior occasion but that she was not there on the date of the alleged offense. The former related a repulsive story of appellee's misconduct with both girls in his chambers on that date. When the

State rested appellee asked for a peremptory instruction of not guilty.

Enough has been written in the books about this crime. *Glover* v. *State* (1913), 179 Ind. 459, 101 N. E. 629, 45 L. R. A. (N. S.) 473; *Young* v. *State* (1924), 194 Ind. 221, 141 N. E. 309; *Connell* v. *State* (1939), 215 Ind. 318, 19 N. E. (2d) 267; *Sanders* v. *State* (1940), 216 Ind. 663, 25 N. E. (2d) 995. Examination of the records in each of them reveals that in the *Young* and *Connell* cases the misconduct of the accused was similar to that charged against appellee. If the evidence in those cases was sufficient to sustain the verdicts, here it was sufficient to take the case to the jury. Fortunately we need not be more specific.

The conclusion of the trial judge was the product of incorrect reasoning shown by a written opinion which preceded and is a part of the entry of the giving of the peremptory instruction. After stating the issues, quoting the evidence and attempting to define the offense he calls attention to the fact that the girl without prearrangement entered the appellee judge's chambers about 10:30 a. m. while the court was in session and after its adjournment the "alleged rendezvous took place in the court's chambers." He continues: "The complaining witness says that she and a girl companion were together all of the time. The girl companion testified that she was not there at all. . . . The State of Indiana by offering as witnesses both the complaining witness and her alleged companion necessarily asks that they both be believed. . . . I might say here that the doctrine of *falsus in uno falsus in omnibus,* which means false in one thing, false in everything, might be applied because the response(s) of these two witnesses were material to a fair method of reaching a conclusion. The testimony of both of

them the court or jury would be justified in casting from his mind entirely."

This would have been a legitimate argument to make to the jury. The judge apparently convinced himself but it was not his turn to be convinced. First the jury must decide upon the credibility of witnesses. If the judge does not. believe the testimony on which the verdict is based, he may and should set it aside. If the rule should obtain that a judge may direct a verdict in accordance with his opinion as to the weight of the evidence, the result would be the denial of the constitutional right to a jury trial.

In his written opinion the trial judge also refers to what he considers a "physical impossibility" for the crime, as defined by him, to have been committed. We doubt the correctness of his definition but, if it be conceded, the acts were not impossible. Their improbability would not justify his withdrawing the case from the jury.

We can well understand the trial judge's reluctance to believe that a man occupying appellee's position in the community could be guilty of such infamous misconduct but, we repeat, since this was a jury trial and there was evidence, which, if believed, would sustain a conviction, the jury had the first right to pass upon its credibility.

In an appeal like this, *State* v. *Kubiak* (1936), 210 Ind. 479, 480, 4 N. E. (2d) 193, the same question we are now considering was determined as follows:

"It is thoroughly settled by the decisions in this state that a peremptory instruction directing a verdict can only be given where there is a total absence of evidence upon some essential issue, or where there is no conflict in the evidence and it is

susceptible of but one inference and that inference is favorable to the party asking the instruction. Watson's Rev. of Works' Practice and Forms, § 1685. The witnesses had testified positively to material facts which sustained the state's case. There was therefore not a total absence of testimony. Whether the state had proved its case, after this testimony was in, depended upon whether the jury would give credence to the testimony. Where a determination of the issue involves the credibility of witnesses, it is an invasion·of the province, of the jury for the court to direct a verdict. *Haughton* v. *Aetna Life Insurance Co.* (1905), 165 Ind. 32, 73 N. E. 592, 74 N. E. 613."

Accordingly we hold the trial court erred in sustaining appellee's motion for a peremptory instruction of not guilty and in giving such an instruction.

Perhaps the girl's testimony would not have seemed so improbable if the court had admitted other evidence which appellant by its assignments says was erroneously excluded. The third and fourth charge error in not permitting her to testify that the two girls on numerous different occasions after March, 1939, and prior to June 28, 1939, were in appellee's chambers where similar sexual offenses occurred. The fifth and sixth deal with similar offenses at a swimming party of the three on June 30, 1939. The seventh and eighth charge error in excluding testimony of another girl witness .(neither of the girls above referred to) as to two separate similar offenses in May, 1939, both at swimming parties, the first including the witness, another girl, appellee, and a boy, the second including the same persons and another girl. The ninth alleges error in excluding a boy's testimony as to acts occurring when he was ·alone in chambers with appellee in November, 1940.

The questions presented are not altogether new·in Indiana. *State* v. *Markins* (1884), 95 Ind. 464, 48 Am.

Rep. 733, was an appeal by the State on a reserved question of law, namely, error in excluding evidence of prior acts of indecent familiarity and sexual intercourse in a prosecution for incest. It is said by Judge Elliott on p. 466:

"The general rule undoubtedly is that one crime can not be proved in order to establish another independent crime, but this rule does not apply to cases where the chief element of the offence consists in illicit intercourse between the sexes. The decisions all agree that the cases growing out of illicit commerce between the sexes are not within the general rule. In the case of *People* v. *Jenness*, 5 Mich. 305, it was held that evidence of other acts of sexual intercourse was competent in prosecutions for incest. The case was fully argued, and the opinion is an able one."

Judge Elliott then quotes from this and other cases and concludes with the statement that the appeal must be sustained. We agree with his estimate of the Jenness opinion and further quote therefrom (p. 323):

"In any case, where a witness has testified to a fact or transaction which, standing alone and entirely unconnected with anything which led to or brought it about, would appear in any degree unnatural or improbable in itself, without reference to the facts preceding and inducing the principal transaction, and which, if proved, would render it more natural and probable; *such* previous facts are not only admissible *and relevant, but they constitute a necessary part of such principal transaction—a link in the chain of testimony, without which it would be impossible for the jury properly to appreciate the testimony in reference to such principal transaction. And such previous facts should therefore be elicited by the examination of the party producing the witness. Any other rule, in such a case, would be grossly unfair towards the witness; render a trial a process for suppressing, rather than eliciting, the truth, and defeat the

very objects for which courts of justice are instituted.

"In the order of nature, facts do not occur single and independent—isolated from all others—but each is connected with some antecedent fact, or combination of facts, from which the fact in question follows as an effect from a cause. Torn from this necessay connection, and exhibited alone, many real occurrences would appear under the guise of falsehood, and truth itself would be made to lie.

"To permit the evidence, therefore, of an isolated transaction, which could only be made to appear probable by exhibiting the antecedent facts which induced it, and yet to exclude from the investigation all such antecedent facts, would be to set at defiance the order of nature, and the laws of truth which God has stamped upon the human mind."

The same principle is stated in *Barnett* v. *State* (1922), 104 Oh. St. 298, 135 N. E. 647, from which Judge Ewbank quotes on p. 474 of the opinion in *Barolos* v. *State* (1924), 194 Ind. 469, 143 N. E. 360. In that case, which was a prosecution for sodomy, several boys were involved. They were permitted to testify as to similar offenses committed about two months prior to the date of the offense charged in the affidavit. After discussing numerous cases Judge Ewbank concludes: "And we think the evidence in question was competent for the purpose of explaining their passive participation and their silence, and to rebut an inference that the story they told was too improbable to be true."

Another well reasoned case is *State* v. *Reineke* (1914), 89 Oh. St. 390, 394, 106 N. E. 52, 53, L. R. A. 1915A 138, wherein Judge Wanamaker says:

"These sexual crimes, which are an exception to the general rule as to other similar acts being admissible in evidence, may be characterized as crimes *in continuando*. The law recognizes as a matter of

common knowledge that where a single act of that character arises, there is great probability of other similar acts, either before or after, or both, and therefore the sexual conduct of the parties in question toward each other, especially the lecherous and bestial disposition of the defendant toward the prosecutrix, is a proper fact for the consideration of the jury, not to prove some other and independent offense, but for the purpose of making more probable the specific and distinct offense charged."

See also *Lefforge* v. *State* (1891), 129 Ind. 551, 29 N. E. 34; Note 62 L. R. A. beginning at p. 329.

Heretofore the Indiana cases, with one exception, seem only to have been concerned with the admissibility of evidence of similar offenses occurring prior to the date of the offense charged in the indictment. Why should not subsequent acts, not too remote, also be admitted? Judge Wanamaker in the *Reineke* case seems to have the logical answer, as follows (p. 397):

"We believe that there is a misapprehension here of the real purpose of admitting this kind of evidence. Its relevancy is to get before the court and jury the sexual relations of the parties covering the date of the indictment. If the sexual relations of the parties at the time of the indictment be a proper question, then certainly their relation for a reasonable time before, as well as a reasonable time thereafter, is equally competent, notwithstanding the fact that the prior acts may have more probative force and effect than the subsequent acts; but this all goes only to the weight of the evidence and not to its competency."

Having in mind these principles we have no difficulty in sustaining all of the assignments of error in excluding evidence except the ninth. This was an offense alleged to have been committed with a boy in Novem-

ber, 1940, about a year and a half after the date of the last of the other alleged offenses. It was dissimilar in character. Although the evidence, if believed, would have tended to show the accused's disposition toward sexual crimes, we cannot say that the court, who has some discretion in determining the probative force of remote facts, erred in its exclusion.

Our holding as to the fifth and sixth assignments (offenses occurring two days after the date of the offense for which he was being tried) is not compatible with the decision in *Lovell* v. *State* (1859), 12 Ind. 18. The court therein lays most stress on the element of surprise, saying, ". . . it cannot be expected that he will be prepared to defend himself against any charge other than that exhibited against him." But in the Markin case the court did not let that argument deter it from holding that prior similar offenses were admissible in prosecutions for sexual crimes. Judge Elliott attempts to distinguish the Lovell case on the ground that prior acts "constitute the foundation of an antecedent probability; but where they follow the main offense their force and effect are materially different." We think this argument is met by Judge Wanamaker in the Reineke case. The probability of the offense having occurred is supported by proof of subsequent acts, not too remote, although the weight of the evidence may not be so great as evidence of prior acts. Only one day intervened between June 28 and June 30. We believe this interval was so short as to make the evidence admissible. At the time of the decision of the Lovell case, the text in Greenleaf, Evidence, and the opinions in *People* v. *Jenness, supra,* and *Lawson and Swinney* v. *The State* (1852), 20 Ala. 65, all cited in *State* v. *Markins, supra,* were available but seem not to have been called to the attention of the court. While

it is true that they related to antecedent offenses, we think the principles stated therein were also applicable to subsequent offenses. The case of *State* v. *Lovell* is therefore overruled.

The only other error assigned is the sustaining of appellee's motion to strike out the state's verified petition to prohibit three attorneys from participating in the cause. The petition is as follows:

"Comes now the State of Indiana, by Arthur L. Hart, Prosecuting Attorney, Gilbert Shake, Deputy Prosecuting Attorney, and Glen L. Steckley, Deputy Attorney General, of the State of Indiana, and respectfully shows to the Court that:

(1) That on and prior to November 25, 1941, the State of Indiana was engaged in investigating certain charges which had been made against the defendant in this cause, Herman Robbins, concerning the conduct of said Herman Robbins with reference to minor children; that there were rumors throughout Vincennes and the surrounding community of said investigation, and that the fact of such investigation was known and discussed among the members of the Knox County Bar.

(2) That thereafter, the exact date being unknown, but on a date prior to the 25th day of November, 1941, a group of members of the Knox County Bar met in a meeting and discussed the fact that such an investigation was being made, and agreed that a committee should be appointed, composed of six (6) members of the Knox County Bar, three (3) of whom should be Democrats, and three (3) of whom should be Republicans, to investigate the nature of the investigation being made concerning the said defendant, and to contact the Prosecuting Attorney of Knox County and to petition said Prosecuting Attorney to turn over to said committee such facts and affidavits, if any, that he might have, with reference to said investigation, to have him turn over the names of any proposed witnesses, and to ask said Prosecuting Attorney to arrange a meeting whereby said attorneys might meet, question and interview said wit-

nesses; that it was discussed at said meeting of said attorneys that in the event the said committee to be selected should determine that the charges against the defendant Robbins were true, that said committee should wait upon the said Herman Robbins, who was then sitting as the regularly elected and qualified judge of the Superior Court of Knox County, Indiana, and demand that said Robbins resign his office as judge, for the betterment of the public, the bench and the Bar; that at said meeting the following named members of the Knox County Bar were selected to serve upon the said committee to contact the Prosecuting Attorney, as aforesaid, namely, John Ramsey, John Rabb Emison, W. H. Hill, Harry Lewis, Sherman G. Davenport and Joseph W. Kimmell.

(3) That thereafter, on or about the 25th day of November, 1941, one of said lawyers acting as a representative of said committee of six, waited upon the said Prosecuting Attorney and told him of the meeting which the members of the Bar of Knox County had had and told him of the selecting of said committee, its personnel and its purposes, that said representative of said committee then and there requested said Prosecuting Attorney to furnish said committee of six the names of any witnesses which the Prosecutor had with any statement that had been obtained from any such witness, and asked that the Prosecutor arrange a meeting wherein the committee of six could meet and interrogate said witnesses with reference to the facts concerning said charges; that the said representative of said committee then and there represented to the said Prosecuting Attorney that in the event the said Prosecuting Attorney agreed to furnish the information and witnesses as aforesaid, to said committee, that none of said committee would represent the said Herman Robbins in any criminal charges which might thereafter be filed against him arising out of said charges; that relying on the representations of said representative of said committee and in the interest of the bench, the Bar and the public generally, the said Prosecuting Attorney agreed to furnish said information, names of witnesses and witnesses to said

committee as aforesaid; that it was then and there agreed by the said representative and the said Prosecuting Attorney that said committee of lawyers would assemble on or about November 26, 1941, in Vincennes, Indiana, and that the Prosecuting Attorney would furnish the names of the witnesses, statements and witnesses at said meeting.

(4) That on said day five (5) of said committee of six (6), towit, John Ramsey, John Rabb Emison, W. H. Hill, Harry Lewis and Sherman G. Davenport met with said Prosecuting Attorney; that at said time and place said Prosecuting Attorney furnished them the names of ten (10) witnesses who were witnesses to the charges against the defendant, and furnished to said committee the statements of said ten witnesses; that at said time and place, said Prosecuting Attorney also caused to be present five (5) children who were witnesses as to said charges, to-wit, ———, ———, ———, ———, and ———; that at said time and place said committee talked to said children, questioned and interrogated said children relative to alleged improper acts and conduct of the defendant Robbins for a period of more than three hours; that the Prosecuting Attorney was present with said committee of lawyers during a part of the examination of said children, and that during the time when said Prosecuting Attorney was present with said committee, that one member of said committee stated to the said Prosecutor that the Prosecuting Attorney had been very fair in furnishing the said information and witnesses to said committee and that no member of said committee should defend the defendant in any criminal charges that might be brought against him concerning such offenses; that no objections to said statement was made by any other member of said committee.

(5) That thereafter, on the 28th day of November, 1941, said committee of six met by prearrangement in the office of Joseph W. Kimmell, which is directly across from the Court House in Vincennes, Indiana; that said committee assembled there at approximately three (3) o'clock in the afternoon, at which time said committee proceeded to the

office of the defendant Robbins in said Court House; that the action of said committee in assembling as aforesaid and waiting upon the defendant Robbins in his office in the Court House was voluntary and of its own volition; that said committee and the defendant Robbins then proceeded to the library of the Superior Court of Knox County, at which time the defendant Robbins requested the purpose of its visit to him; that said committee told said defendant Robbins that it had heard of and investigated rumors of the defendant's alleged improper acts with minor children, that said committee itself had made an investigation and had talked with witnesses in an effort to discover the truth or falsity of said charges, and that in the opinion of said committee, after said investigation, that for the benefit of the Court, the Bar, and the public that said Robbins should resign as judge of the Superior Court of Knox County; that thereafter, the said Herman Robbins prepared and signed a written resignation, resigning from the office of judge of the Superior Court of Knox County, said resignation to be effective on the 24th day of December, 1941, and placed said resignation in the hands of one member of said committee, John Rabb Emison; that thereupon the said defendant Robbins caused to be prepared a written appointment of a judge pro tem for said court, which appointment the defendant Robbins then and there signed, leaving the name of the person to serve as judge pro tem in blank, and also placed said instrument in the hands of one of the members of said committee, John Rabb Emison; that at said time and place said committee represented to the defendant that the Prosecuting Attorney had told said committee that the whole matter was going to be presented to the Grand Jury of Knox County, which was to be called shortly thereafter.

(6) That thereafter, on or about the 4th day of December, 1941, the Grand Jury for the November Term of the Knox Circuit Court returned eight (8) indictments; that said indictments against said defendant Robbins were based upon evidence heard by said Grand Jury from ———, ———, ———, ———, and ———, the witnesses who at the re-

quest of said committee had appeared before and had been interrogated by said committee of six; that in said eight indictments were charges against the defendant, alleging misconduct with each of said five minor children, and that the indictment, in Cause No. 4878, charged misconduct by the defendant with one ———, who is one of said minor children who appeared and was questioned and interrogated by said committee; that thereafter the defendant was arraigned in the Knox Circuit Court upon said eight indictments, and that Sherman G. Davenport, Harry R. Lewis and John Rabb Emison, each of whom served upon the said committee, appeared as counsel for said defendant.

(7) That thereafter, to-wit, on the 6th day of April, 1942, the trial upon said indictment, to-wit, Cause No. 4880, charging improper conduct by the defendant, Herman Robbins, with one ———, who was one of the witnesses who appeared before the said committee of lawyers, was commenced in the Knox Circuit Court, and that thereafter, the said ——— refused to testify in said cause, because to so testify would incriminate him, and that thereafter said cause was dismissed.

(8) That thereafter, on April 16, 1942, the defendant and his counsel, the Prosecuting Attorney and the Deputy Prosecuting Attorney and Special Judge William F. Dudine, who was Judge upon the trial of said Cause No. 4880, all appeared in open Court in the Knox Circuit Court for the purpose of making the record of said Special Judge disqualifying himself to continue as Judge in said other causes, and that at said time and place and on the said occasion the said attorneys for the said defendant then and there handed and presented to the said Prosecuting Attorney a request that the case be dismissed, signed by ———, the father of ———, who is the minor child upon whom the defendant is charged with misconduct in the indictment in Cause No. 4878, and the said ——— is the same ——— as appeared and was questioned by said committee of lawyers as aforesaid; that at said time and place similar notices were similarly served by the defendant's counsel on the Prosecut-

ing Attorney, said notices being signed by the parents of the children involved in the other indictments and all of which children are the children who appeared and were questioned by said committee of lawyers.

(9) That since the day upon which the said notices were served on said Prosecuting Attorney as aforesaid, one of the counsel for the defendant, Carl M. Gray, had stated that what had happened in the ——— case would happen in all of the other cases against the defendant Robbins.

(10) That the said Sherman G. Davenport, Harry R. Lewis and John Rabb Emison appeared for the defendant in said cause as aforesaid, and have continued to represent said defendant, as counsel, and will, unless prohibited by the Court, represent the defendant in the trial of this cause; that having obtained the names of witnesses, the statements of said witnesses and other information concerning the charges contained in the indictments against the defendant Robbins, and particularly the charge contained in the indictment in this Cause No. 4878, from the Prosecuting Attorney of Knox County, and having interviewed and questioned said witnesses while acting as members of the committee of lawyers of the Knox County Bar, it would be unconscionable, unethical, inconsistent, inequitable and would impede the administration of justice and would be contrary to law to permit said attorneys, Sherman G. Davenport, Harry R. Lewis and John Rabb Emison to participate in the trial of this cause.

WHEREFORE, the petitioner prays the court that the court hear evidence upon this motion and make an order prohibiting and restraining Sherman G. Davenport, Harry R. Lewis and John Rabb Emison, directly or indirectly, from participating in the trial of this cause and from furnishing or supplying any facts, statements or information obtained by them as members of the committee of lawyers of the Knox County Bar to other counsel for the defendant and for all other proper relief."

Appellee's motion is as follows:

"The defendant, Herman Robbins, moves the Court to strike out and to suppress the verified petition to restrain and prohibit attorneys from participation in said cause, which was filed by the State of Indiana on May 25, 1942, in said cause, for each one severally of the following reasons, namely, to-wit:

1. That said petition does not state facts sufficient as a matter of law to authorize the Court to restrain counsel, mentioned in said petition, from representing the defendant in the trial of said cause.

2. That said petition does not state facts sufficient as a matter of law to authorize the Court to make inquiry into the right of said parties to participate in said action and to hear evidence.

3. That heretofore in this cause the record shows on its face that each of the attorneys which have appeared for the defendant herein appeared in said cause for and on behalf of the defendant soon after the indictment herein was returned, filed a motion to quash this indictment, prepared, filed and presented a plea in abatement wherein they sought to have this cause of action abated, have participated in the defense in this cause up to this point by preparing and serving notices of the defendant's intention to rely as a part of his defense upon an alibi.

4. That this date in said cause prior to the time that the State filed its verified petition which the defendant seeks to strike out, all of said attorneys participated in representing the defendant in the trial of this cause; that the State of Indiana at no time prior to the filing of the verified petition herein made any objection to any counsel for the defendant participating in the defense of this cause of action.

5. That the Prosecuting Attorney has had possession of the facts, if any are alleged in said verified petition, prior to the time of the Grand Jury investigation, and the return of the indictment herein, but with said facts in his possession has not objected heretofore to counsel for the de-

fendant participating in the defense of this cause of action.

6. That at this time the State of Indiana is estopped from objecting to counsel for the defendant named in said verified petition from further participating in the defense of this cause of action.

7. That the allegations contained in said verified petition are infamous, scandalous, ridiculous, and are made for the sole and only purpose of casting suspicion, and doubt, upon this defendant's defense and the reputation of his counsel; and said petition is filed for the sole and only purpose of creating prejudice in the minds of the citizens of Knox County, and in the minds of prospective jurors, to prevent this defendant from having a fair and impartial trial of this cause of action, and as carrying out as a part of the plan conceived by the Prosecuting Attorney, Arthur L. Hart, to smear the good reputation and character of this defendant and defendant's counsel, and by reason thereof said verified petition should be suppressed and the newspapers prohibited from publishing the same.

WHEREFORE, the defendant prays and demands that this motion be sustained; that said petition be stricken from the record; that the same be suppressed and that the newspapers be instructed to refrain from publishing the same, and for all other relief, just and proper in the premises."

The motion to strike, like a demurrer, treated as true the facts well pleaded with all their reasonable intendments but denied that such facts if true constituted a legal basis for the relief asked in the pleading. We are therefore not concerned with the actual truth or falsity of any of the statements in either pleading. If the allegations of the petition are true it is neither "infamous, scandalous nor ridiculous." See *Barnard* v. *Kruzan, post* pp. 208, 216.

A situation was presented which not only authorized the hearing of evidence as requested by the petition

but demanded such a hearing. Considered in the light of the other allegations the statement in rhetorical paragraph nine alone suggests possibilities warranting the trial court's inquiry into the facts. The attorneys for appellee, in paragraph seven of their motion, themselves recognized the impropriety of conduct such as that set forth in the petition for they asserted that if it was not suppressed but was brought to the attention of the public suspicion and doubt would be cast upon the professional reputation of the attorneys involved. No attorney's reputation should be injured by proper conduct. By objecting to an inquiry into the facts did they not fall into the more serious error of permitting doubt and suspicion to be cast upon the integrity of the court itself which is above and beyond the judges and lawyers who are its officers?

There can be no quibbling as to the particuarity with which the facts are set forth. They show the organization of a bi-partisan committee to act in behalf of the bench, bar and the public along the same lines and for purposes similar to those in the investigation already begun by the prosecuting attorney. The committee asked for his aid in conducting its inquiry and at its request and relying on its representations he furnished all the aid requested. The members of the committee met with the witnesses, saw their written statements and exercised the right to examine and cross-examine them for three hours in the endeavor to ascertain the truth. They were persuaded by this inquiry, to the extent at least that they felt it would be best for the bench, bar and public that appellee relinquish his office, and they procured his resignation to take effect upon a day certain.

As members of such committee the lawyers sought to be restrained herein obtained an entree to the homes

of the children involved, not as attorneys for appellee but as quasi-public officials engaged in the unpleasant duty of determining whether the bench was polluted by an unfit Judge and, if so, procuring his resignation. The allegations of rhetorical paragraph eight indicate contact was made with the parents of these children. It is not, and probably could not be, disclosed by the prosecutor what representations might have been made in order to procure the parents' requests for dismissal of the cases.

In the face of an express agreement the three changed their position from quasi-public officials engaged in a public duty to that of private counsel for the █ man whom they had asked to resign because of the very misconduct for which he was under indictment. Surely no right thinking lawyer will approve such conduct, even in the absence of an agreement. Whether or not the State had already been harmed or could be harmed in the prosecution of its case by their possession of information obtained under auspices of the State, it cannot be doubted that no member of the committee should have been permitted to participate in the trial.

In civil cases litigating private disputes it has often been held that an attorney is not permitted to change sides. Such are *Price* v. *Grand Rapids and* █ *Indiana R. R. Co.* (1862), 18 Ind. 137; *Bowman* v. *Bowman* (1899), 153 Ind. 498, 55 N. E. 422, cited by appellant. In *Wilson* v. *State* (1861); 16 Ind. 392, a judgment was reversed because a lawyer who had been employed by the defendant was thereafter permitted to assist in the prosecution. This statement is made therein by Judge Hanna (p. 395):

"It is not our province, in our opinions, required by the Constitution, to administer a rebuke to any

one, intended as such. We are only called upon to pronounce the law, as we conceive it to be. In searching for the reason upon which a conclusion rests, we are often led to consider the results which might flow from the maintenance of an adverse conclusion. For instance, in the case at bar, if the ruling of the Court below, and the conduct of Mr. Flagg as an attorney and officer of that Court, should be sanctioned as legal, we are constrained to believe, that the positive tendency of such ruling would be to defeat the very purpose for which the Court was organized, namely, the administration of justice; and if indulged and continued in Courts, and the officers thereof, will necessarily result in sapping the foundations of the temple of justice."

It may be noted that the same lawyer was involved in the two early Indiana cases. *Steeley* v. *State* (1920), 17 Okla. Cr. 252, 187 P. 821, is similar to the *Wilson* case.

The statement is made in *In re Stephens* (1888), 77 Cal. 357, 359, 19 P. 646, 647:

"It has always been considered a sufficient cause for disbarment for an attorney and counselor to urge and aid in the prosecution, and then appear for the defense of a person charged with crime; or to encourage the commencement of proceedings which he knows, or has reason to know, are illegal or unjust. Weeks, on Attorneys and Counselors, pp. 140 *et seq.*"

While the committee in this case was not urging or aiding in the prosecution of appellee it was associated with the prosecution in an inquiry that led to the indictment and resulted in the committee's request for his resignation. This disgrace coming to a man in a high judicial office might be felt as keenly as imprisonment.

The general principles involved in cases such as this are stated in the cases above and later cited from which

we need not further quote. We find no case, nor have counsel for either party cited a case, that presents facts closely similar to those in the instant case. Because of this dearth of authority, according to appellee's brief, the filing of the petition is attributable to the "effrontery" of the prosecutor in attempting to "smear and besmirch the good names and reputations of practicing attorneys." We find no justification in the record for that statement other than appellee's assertion that some of the facts alleged in the petition are untrue. Their truth is not an issue in this appeal. We think it far more likely that if any such case has ever arisen, the trial court, as it should have done in this case, made complete investigation and, if the facts warranted, prohibited attorneys from further appearing in the case. Under such circumstances there would likely be no error to be presented in an appeal, which would explain the lack of authority.

The state was not estopped nor had it waived its right to file the petition. The record shows that it was filed before any jurors were examined as to their qualifications as such. It is not as if the attorneys had been required to withdraw in the midst of a trial to the prejudice of appellee's defense. From the date of arraignment until the day of trial in the making of issues the information obtained by the committee would be of no advantage to the three acting as appellee's attorneys and no detriment to the State. In the trial itself such information might be utilized to the disadvantage of the State in the examination and cross-examination of witnesses and, as indicated in the eighth rhetorical paragraph, it might have aided in changing the attitude not only of the children themselves but of their parents whose written requests for

dismissal of the prosecution apparently were procured by appellee's attorneys.

The cases cited in support of appellee's claim of estoppel distinguish themselves. In *Harvey* v. *Harvey* (1930), 202 Wis. 553, 231 N. W. 580, which was an action in equity to require conveyance of certain stock, an attorney participated who had been employed by the opposing party and acquired information in the course of such employment. The first objection to such participation was made on appeal. The court held that the objection came too late. In *State* v. *Baird* (1921), 288 Mo. 62, 231 S. W. 625, the state charged that the character of the accused was bad, produced evidence by which it hoped to sustain the charge but which showed that his character was good. It was held on appeal that the state was not in a position to contend that the accused's character was not in issue. Dicta in the opinion are sound when applied to the decision. They are not applicable to the facts in the case at bar. In *Gottwals* v. *Rencher* (1940), 60 Nev. 47, 59, 98 P. (2d) 481, it is shown that an attorney who had formerly represented the' plaintiff respecting the subject matter of the action was permitted to represent the defendant with his express consent. Plaintiff sought to have the judgment against him set aside because of the participation of his former attorney. The court said (p. 487) :

"As previously pointed out, the court found on substantial evidence that Morse acted with the consent of plaintiff given through the latter's counsel. This was an express waiver. No objection or protest was ever made by plaintiff at any stage of the proceedings, during the trial or after decision, or at all, until his present attorney filed the motion to enjoin Morse on June 14, 1938, over a year after Morse appeared in the case as one of the attorneys for defendants. This conduct was in itself a

waiver. A party ought not to be permitted to remain quiescent over a long period of time looking for a favorable decision, and, if unsuccessful, obtain a reversal upon a mere charge of collusive fraud between his own attorneys and the attorney on the other side, by which the latter was permitted to appear against him in the action."

The able opinion of Judge Morrow in *In re Boone* (1897), 83 F. 944, does not even lend color to appellee's claim of waiver or estoppel. This is true also of *Peirce* v. *Palmer* (1910), 31 R. I. 432, 77 A. 201, Ann. Cas. 1912B 181. Both cases contain lengthy discussions relative to the duty of an aattorney to avoid changing employment to the detriment of former clients. They lend support to the conclusion we have reached rather than the proposition for which they are cited by appellee.

The only other case cited is *Hicks* v. *Drew* (1897), 117 Cal. 305, 49 P. 189. It appears therefrom that the plaintiff objected to "one of defendant's attorneys appearing in the case upon the ground that his prior professional relations with her had been such as, in law, to deprive him of that right." The court did not arbitrarily overrule the objection, as was done in this case by sustaining the motion to strike out the petition, but followed the proper course and heard evidence as to the facts upon which the objection was based. The reviewing court said that "wherever contradictions do exist, we are bound to resolve them in such a way as to support the action of the trial court," and following that rule held that inasmuch as the only conversation between attorney and plaintiff was with respect to determining the amount which he would charge for prospective employment the relation of attorney and client did not exist and no disqualification was shown.

The State in its briefs has presented the questions from a purely legal standpoint. The brief of appellee abuses the prosecuting attorney for doing what it seems to us he was bound to do if the facts stated in the petition are true. We are not concerned with their truth or with the motives of either party or their counsel. We have tried to decide a naked question of law as we are required to do in any appeal of this character.

The appeal is sustained.

Shake and O'Malley, JJ., not participating.

NOTE.—Reported in 46 N. E. (2d) 691.