Donald G. LANNAN, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 71S03–9210–CR–836.

Supreme Court of Indiana.

Oct. 16, 1992.

Kenneth M. Hays, South Bend, for appellant.

J. Richard Kiefer, Jane H. Ruemmele, Kevin McShane, Susan D. Burke, Indianapolis, for amicus curiae Indiana Ass'n of Criminal Defense Lawyers.

Linley E. Pearson, Atty. Gen., Lisa M. Paunicka, Deputy Atty. Gen., Indianapolis, for appellee.

## ON CRIMINAL PETITION TO TRANSFER

SHEPARD, Chief Justice.

A jury convicted appellant Donald Lannan of molesting young V.E., after hearing testimony from another girl who said Lannan had molested her in the past and testimony from the victim regarding several

other instances of molestation which were not charged. Lannan's petition for transfer asks this Court to abandon the so-called "depraved sexual instinct" exception under which evidence about these uncharged acts was admitted. We grant transfer to reexamine the exception, its rationales, and whether they remain compelling enough to justify its continued application. Counsel for the parties and for amicus have presented us with excellent briefs on this question. We have concluded that Rule 404(b) of the Federal Rules of Evidence provides a better basis for testing the admissibility of this sort of evidence than our existing case-law provides.

### I. History of the Exception

It has long been settled that in prosecutions for incest, sodomy, criminal deviate conduct or child molesting, evidence of certain kinds of prior sexual conduct is admissible under Indiana's depraved sexual instinct exception to the general rule of inadmissibility of prior bad acts. *See Stewart v. State* (1990), Ind., 555 N.E.2d 121; *State v. Robbins* (1943), 221 Ind. 125, 46 N.E.2d 691; *State v. Markins* (1884), 95 Ind. 464. This exception has been carved out of the general rule for two reasons. First, the exception has been based on a recidivist rationale: " 'Acts showing a perverted sexual instinct are circumstances which with other circumstances may have a tendency to connect an accused with a crime of that character.' " *Kerlin v. State* (1970), 255 Ind. 420, 424, 265 N.E.2d 22, 25 (quoting *Lovely v. United States*, 169 F.2d 386, 390 (4th Cir.1948)). Second, the exception has been based on the need to bolster the testi-

mony of victims: to lend credence to a victim's accusations or testimony which describe acts which would otherwise "seem improbable standing alone." *Stwalley v. State* (1989), Ind., 534 N.E.2d 229, 231.

The desire to level the playing field by bolstering the testimony of a solitary child victim-witness (recounting unspeakable acts, often in embarrassing detail in the intimidating forum of a courtroom while subject to aggressive cross-examination) was central to the holding in *Robbins,* the forerunner in a long line of modern era cases developing the depraved sexual instinct exception.[1] In *Robbins,* the defendant was the superior court judge in Vincennes during the late 1930s. He was indicted on two counts of sodomy with a twelve-year-old girl. The case might fairly have been characterized as a credibility contest between a child and a pillar of the community. To even up this contest, the State sought to introduce testimony from other children regarding other instances of sexual misconduct committed by the defendant against children. The trial court excluded the evidence; this Court held that the testimony of the other children should have been allowed.[2]

Indiana has not stood alone in fashioning exceptions to the rules of evidence in cases where children are victims of sexual abuse. Approximately twenty other states have or have had such exceptions.[3] Some, such as Missouri and Kansas, explicitly recognize a depraved sexual instinct exception, *State v. Lachterman,* 812 S.W.2d 759 (Mo.Ct.App. 1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1666, 118 L.Ed.2d 387 (1992), or allow evi-

---

1. *See, e.g., Lamar v. State* (1964), 245 Ind. 104, 195 N.E.2d 98; *Miller v. State* (1971), 256 Ind. 296, 268 N.E.2d 299; *Lawrence v. State* (1984), Ind., 464 N.E.2d 923; *Kuchel v. State* (1991), Ind., 570 N.E.2d 910.

2. The State appealed on reserved questions of law following the defendant's acquittal after the trial judge instructed the jury to find him not guilty. This Court found error in the directed verdict, as well, and in so doing shed light on its motivation.

    We can well understand the trial judge's reluctance to believe that *a man occupying appellee's position in the community* could be guilty of such infamous misconduct but ...

the jury had the first right to pass upon its credibility.

    Perhaps the girl's testimony would not have seemed so improbable if the court had admitted other evidence ... erroneously excluded. *Robbins,* 221 Ind. at 134–35, 46 N.E.2d 691 (emphasis added).

3. *See* Chris Hutton, *Commentary: Prior Bad Acts Evidence in Cases of Sexual Contact with a Child,* 34 S.D.L.Rev. 604, 614 n. 47 (1989); EDWARD J. IMWINKELRIED, UNCHARGED MISCONDUCT EVIDENCE §§ 4.11–4.18 at 34–52 (1984 & 1992 Supp.).

dence of prior bad acts to prove defendant's "lustful disposition or nature." *State v. Whiting*, 173 Kan. 711, 252 P.2d 884 (1953). Others, such as Illinois, South Dakota and Wisconsin, follow rules similar to Federal Rule of Evidence 404(b),[4] but stretch the definition of the common scheme and plan doctrine to allow prior occurrences of sexual misconduct into evidence, in effect to prove proclivity. *See People v. Partin*, 156 Ill.App.3d 365, 509 N.E.2d 662 (1987); *State v. Means*, 363 N.W.2d 565 (S.D.1985); *State v. Friedrich*, 135 Wis.2d 1, 398 N.W.2d 763 (1987). One court has likened this contortion of the traditional 404(b) exceptions to "forcing a square peg into a round hole." *Lachterman*, 812 S.W.2d at 768.

The Supreme Court of Wisconsin has been particularly forthright in explaining the justification for what has come to be known in that state as the "greater latitude" doctrine. *Friedrich*, 398 N.W.2d at 775. The justification is, quite simply, protection of children, the most sexually vulnerable in society. Like our Court in *Robbins*, Wisconsin has sought to level the playing field in service to the desirable social end of convicting child molesters:

> Because of immaturity, fear and embarrassment, sexually abused children find it difficult to testify. It is for this reason that much is being written of late

about the necessity of support activities to make the taking of a statement less traumatic. Among these proposals are video taping their examinations and cross-examinations and allowing appropriate support persons to be present to make the ordeal of reliving and reciting their exploitation less difficult.[5]

> *These are among the reasons why a more liberal admission of other crimes evidence is the rule in Wisconsin on sex crime cases.*

*Id.* 398 N.W.2d at 776 (emphasis added).

## II. The Recidivism Rationale

Implicit in the application of our exception and those applied across the county under different names is the assumption that sexual offenders repeat their crimes more often than other criminals. "To a person of normal, social and moral sensibility, the idea of the sexual exploitation of the young is so repulsive that it's almost impossible to believe that none but the most depraved and degenerate would commit such an act." *Friedrich*, 398 N.W.2d at 763. The Indiana Association of Criminal Defense Lawyers, amicus curiae, calls such a belief "ignorant" and "founded on myth," (amicus brief at 35), yet we are inclined to accept the conclusion that recidi-

---

**4.** Fed.R.Evid. 404(b) reads as follows:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

**5.** Justice Krahulik has written similarly in defense of procedural innovations aimed at lessening the trauma for child witnesses:

> The nature of the relationship between the witness and the accused, the highly embarrassing character of the testimony and the courtroom setting itself combine to create a stressful, traumatic environment likely to

make a child a reluctant, unreliable witness ... [Thirty-four states have recognized that] some measure must be taken to provide additional protection for child witnesses and ... these safeguards can be created without endangering the constitutional rights of an accused.

*Brady v. State* (1991), Ind., 575 N.E.2d 981, 991–92 (Krahulik, J., dissenting).

We also note the General Assembly's concern for child victim-witnesses reflected in several provisions of the Indiana Code. Ind.Code Ann. § 35–37–4–6 (West Supp.1992) allows for the introduction of hearsay statements made by a child in certain circumstances, and for the admissibility of videotaped statements. Ind.Code Ann. § 35–37–4–8 (West Supp.1992) allows for testimony via closed circuit television. *But see Brady*, 575 N.E.2d at 988 (operation of statute providing for videotaping of child's testimony for use at trial without child being able to observe or hear defendant who is represented by attorney violates Indiana constitutional guarantee of right to meet witnesses face to face). *See also* Hutton, *supra* note 3, at 604–05 n. 3.

visim among sexual deviates is quite high.[6] This alone, however, cannot justify continued adherance to the depraved sexual instinct exception. We have no doubt that recidivism among those who violate drug laws, for instance, is extraordinarily high.[7] We do not allow the State to introduce previous drug convictions in its case-in-chief in a prosecution for selling illegal drugs, however, even though it can hardly be disputed that such evidence would be highly probative. This exclusionary rule renders inadmissible character evidence offered solely to show the accused's propensity to commit the crime with which he is charged. The rationale behind this general rule, sometimes termed "the propensity rule," is that the prejudicial effect of such evidence outweighs any probative value. *See Warner v. State* (1991), Ind., 579 N.E.2d 1307. If a high rate of recidivism cannot justify a departure from the propensity rule for drug defendants, logic dictates it does not provide justification for departure in sex offense cases.

### III. The Bolstering Rationale

We turn then to the second rationale frequently offered for the depraved sexual instinct exception—that allowing such evidence lends credence to a victim's testimony describing acts which would otherwise seem improbable standing alone.

This rationale has its origins in an era less jaded than today. When the accusations were brought in *Robbins*, in the late 1930s, the idea that an adult male who occupied a position of responsibility in the community would force himself sexually upon a child bordered on the preposterous. Sadly, it is our belief that fifty years later we live in a world where accusations of child molest no longer appear improbable as a rule.[8] This decaying state of affairs in society ironically undercuts the justification for the depraved sexual instinct exception at a time when the need to prosecute is. greater.

Indeed, there remains what might be labeled the "rationale behind the rationale," the desire to make easier the prosecution of child molesters, who prey on tragically vulnerable victims in secluded settings, leaving behind little, if any, evidence of their crimes. Nearly four decades ago, the Minnesota Law Review, noting the trend toward admissibility of depraved sexual in-

---

6. An Emory University psychiatrist who has accumulated data on more than 500 sexual offenders reports that the average number of sex crimes committed by the adult offender is usually in the hundreds. *See Discovering and Dealing with Deviant Sex,* PSYCHOLOGY TODAY, April 1985, at 8, 10. Conversely, defendant and amicus argue that those convicted of sex crimes have a lower rate of recidivism than those convicted of most other crimes. *See* amicus brief at 17 (citing Blinder, *Psychiatry in the Everyday Practice of Law* 213 (2d ed. 1982 & 1991 supp.)). We believe studies which show a low recidivism rate among sex offenders are of questionable value, since often they utilize arrest and conviction rates, which are inadequate measures of recidivism due to the low number of cases which actually make it that far into the system. *See* A. Nicholas Groth, Robert E. Longo & J. Bradley McFadin, *Undetected Recidivism among Rapists and Child Molesters,* 28 Crime & Delinquency 450 (1982).

It is generally true that most criminals get away with more crimes than they are convicted of, but it would appear that this is especially true of offenders who commit sexual assaults. The low recidivism rate generally attributed to such offenders can be understood due to the low visibility of such offenses.

Although the sexual offender's behavior is repetitive, most of his recidivism goes undetected. This may be attributable in part to how recidivism is defined.

Then, too, there is a wide variety of factors that serve to deter many victims of sexual assault from reporting their victimization. Even if the offense is reported, in the majority of cases, no suspect is apprehended; few of the cases in which a suspect is apprehended reach trial level, and still fewer result in conviction.

*Id.* at 457–58.

7. *See* M.C. Slough, *Other Vices, Other Crimes: An Evidentiary Dilemma,* 20 Kan.L.Rev. 411, 424 (1972).

8. *See, e.g., Mommy, I Need to Talk to You in Private,* INDIANAPOLIS STAR, Jan. 13, 1991, § H, at 1. The same series of articles quoted the chief deputy prosecutor of Hamilton County as saying child sexual abuse has become the number one crime against persons in Hamilton County. *Id.,* § H at 6. It has been estimated that as many as 400,000 children in this country are sexually abused each year. *See* Note, *Retroactive Application of Legislatively Enlarged Statutes of Limitation for Child Abuse: Time's No Bar to Revival,* 22 Ind.L.Rev. 989 (1989).

stinct-type evidence, attributed it to a feeling "that handicapping the state in the prosecution of criminals is undesirable. It is also likely that a realization of the difficulty of obtaining proof of sexual offenses has been partially responsible for the trend." Note, *Evidence of Similar Transactions in Sex Crime Prosecutions; A New Trend Toward Liberal Admissibility*, 40 Minn.L.Rev. 694, 704 (1956). The emotional appeal of such an argument is powerful, given the special empathy that child victims of sexual abuse evoke. But even this cannot support continued application of an exception which allows the prosecution to accomplish what the general propensity rule is intended to prevent.

In the interest of aiding the prosecution, we could of course *expand* the exception and abrogate the general rule. After all, our empathy for victims of all crimes is considerable. But the general rule prohibiting the state from offering character evidence merely to show the defendant is a "bad guy" and therefore probably committed the crime with which he is charged remains as fundamental today as ever. "We indeed live in a vulgar age," *Lee v. Weisman*, — U.S. —, —, 112 S.Ct. 2649, 2681, 120 L.Ed.2d 467 (1992) (Scalia, J., dissenting), when recidivists flout the law and routinely violate the behavioral norms of civilized society. We have not yet reached the point, though, where we are prepared to abandon a basic tenet of criminal evidence law older than the republic itself,[9] however desirable the social end may be. As we said in *Penley v. State* (1987), Ind., 506 N.E.2d 806, 808:

> The notion that the State may not punish a person for his character is one of the foundations of our system of jurisprudence. Evidence of misconduct other than that with which one is charged ("uncharged misconduct") will naturally give rise to the inference that the defendant is of bad character. This, in turn, poses the danger that the jury will convict the defendant solely on this inference.

### IV. Disadvantages of Present Rule

■ We do not wish to imply that the rationales put forth on behalf of the depraved sexual instinct exception are entirely without merit. They are not. Each retains some measure of validity. Yet it seems to us that any justification for maintaining the exception in its current form is outweighed by the mischief created by the open-ended application of the rule.

For instance, the current rule does not oblige the State to give notice of its intention to present evidence of a defendant's depraved sexual instinct (although local discovery rules requiring both sides to exchange witness lists would seem to provide adequate protection if defense counsel is industrious enough to discern through investigation the nature and substance of the witness' testimony).[10] Nor does the rule as it now stands require particular similarity between the prior bad act and the crime charged. *See Jarrett v. State* (1984), Ind., 465 N.E.2d 1097 (uncharged crime need not be identical, sufficient if same sexual instinct is involved).

Then, too, this Court has allowed evidence of extremely remote instances of sodomy, molest or sexual assault, under the theory that remoteness goes to weight and not admissibility. *See Lawrence v. State* (1984), Ind., 464 N.E.2d 923 (evidence of sexual crime committed twenty-two years earlier admitted to show depraved sexual instinct); *Kerlin v. State* (1970), 255 Ind. 420, 265 N.E.2d 22 (in prosecution for sodomy with fifteen-year-old boy, evidence admitted showing defendant committed

---

9. *See Commonwealth v. Boulden*, 179 Pa.Super. 328, 116 A.2d 867, 871 (1955) (quoting I WIGMORE ON EVIDENCE 646 (3d ed. 1940)):

> "[F]or nearly three centuries, ever since the liberal reaction which began with the Restoration of the Stuarts, this policy of exclusion, in one or another of its reasonings, has received judicial sanction, more emphatic with time and experience. It represents a revolution in the theory of criminal trials, and is one of the peculiar features, of vast moment, which distinguishes the Anglo–American from the Continental system of Evidence."

10. *See* Marion County Municipal Court Criminal Discovery Rules II & III, Indiana Rules of Court—State and Federal 366–67 (West 1992). *See also* Allen County Superior Court Criminal Rule 13, *reprinted in Id.* at 467.

sodomy with two adult males seven and eight years before). The *Kerlin* decision drew a strong dissent from Justice DeBruler, who wrote:

> There was no connection between the [prior acts] and the offense being tried. This testimony was not offered as bearing on an issue such as motive, intent, identity; nor could it evince any common scheme or plan, etc. This evidence was offered for the purpose of showing the appellant's character was bad and that he had a tendency to commit acts of sodomy. As such it was inadmissible. *Evidence of other offenses cannot be admitted merely in an attempt to show some predisposition of the accused to commit criminal acts or to establish some likelihood that he might do so.*

255 Ind. at 427, 265 N.E.2d at 26 (emphasis added). Twenty-two years later, Justice DeBruler has carried the day. His reasoning tracks the language of Federal Rule of Evidence 404(b), which we hereby adopt in its entirety,[11] effective from this day forward.

### V. Use of Rule 404(b)

■ We hasten to add that abandoning the depraved sexual instinct exception does not mean evidence of prior sexual misconduct will never be admitted in sex crimes prosecutions. It means only that such evidence will no longer be admitted to show action in conformity with a particular character trait. It will continue to be admitted, however, for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake. "That is, such evidence may be admissible *despite its tendency to show bad character or criminal propensity*, if it makes the existence of an element of the crime charged more probable than it would be without such evidence." *Bedgood v.*

*State* (1985), Ind., 477 N.E.2d 869, 872–73 (emphasis added).

For example, this Court has on occasion approved the admission of evidence of prior sexual crimes under the "common scheme or plan" exception to the general rule. Our cases have recognized two branches of this exception, the first permitting proof of identity by showing the defendant committed other crimes with identical *modus operandi*, and the second permitting proof of an uncharged crime as evidence of a preconceived plan which included the charged crime.

This second branch permits evidence of other criminal activity "to demonstrate the common plan or scheme of criminal activity from which the accused originated the charged crime." *Malone v. State* (1982), Ind., 441 N.E.2d 1339, 1346. Thus, as explained in *Malone:*

> The test to bring evidence of other offenses within the common plan or scheme exception is not whether the other offenses have certain elements in common with the charged crime, but whether the other offenses tend to establish a preconceived plan by which the charged crime was committed. The crimes must, therefore, be so related in character, time and place of commission as to establish some plan which embraced both the prior and subsequent criminal activity and the charged crime.

441 N.E.2d at 1347.

This is also known as the theory of *res gestae*, under which the state is allowed to present evidence that completes the story of the crime in ways that might incidentally reveal uncharged misconduct.[12] We upheld the admission of evidence of uncharged criminal deviate conduct under this theory in *Wilson v. State* (1986), Ind., 491 N.E.2d 537. In *Wilson*, the defendant was convict-

---

**11.** For text of Rule 404(b), see *supra* note 4. The language of Fed.R.Evid. 404(b) also is consistent with this Court's prior descriptions of the general rule, save for the depraved sexual instinct exception. We have repeatedly held that evidence of other criminal activity is inadmissible, except where it may be used to prove intent, purpose, motive, identity, or common scheme or plan. *See Montgomery v. State* (1980), 274

Ind. 544, 412 N.E.2d 793; *Austin v. State* (1974), 262 Ind. 529, 319 N.E.2d 130, *cert. denied*, 421 U.S. 1012, 95 S.Ct. 2417, 44 L.Ed.2d 680 (1975).

**12.** Whether the res gestae concept fits precisely under the Rule 404(b) exception for "plan" is open to doubt. We are inclined to believe that it survives our adoption of Rule 404(b).

ed of one count of criminal deviate conduct for forcing the victim to submit to anal intercourse. The victim also testified that Wilson forced him to perform oral sex. On appeal, Wilson contended that the victim's testimony about the fellatio was inadmissible since he had not been charged with that crime. We affirmed the conviction, holding that "evidence of uncharged crimes may be admitted where each of the crimes are so closely related as to be part of an *uninterrupted transaction.*" *Id.* at 537–38 (emphasis added).

In *Penley v. State* (1987), Ind., 506 N.E.2d 806, we upheld admission of prior sexual assaults under the *modus operandi* exception. That is, the State may prove identity by showing that the similarities between the prior offense and the crime charged are so strong and the method so clearly unique that it is highly probable that the perpetrator of both is the same person. *See id.* at 810. "However, the repeated commission of similar crimes is not enough to qualify for the exception to the general rule. The acts or methods employed must be so similar, unusual, and distinctive as to earmark them as the acts of the accused." *Willis v. State* (1978), 268 Ind. 269, 272, 374 N.E.2d 520, 522. It is also important to note that such evidence may be admitted only where identity is an issue in the case.

Evidence of prior sex offenses—charged or uncharged—may also be admissible under Rule 404(b) to prove absence of mistake. *See People v. Thomas,* 20 Cal.3d 457, 143 Cal.Rptr. 215, 573 P.2d 433, 443 (1978) (Clark, J., dissenting) (father convicted of molesting daughter testified he was merely rubbing vaporizing cream on her chest for treatment of cold; dissent arguing testimony of other daughters that they, too, had been molested by their father was admissible to illuminate defendant's true intent and absence of mistake).

This exception for proving absence of mistake or accident is further explained by Professor Imwinkelried:

> [A]ssume that the defendant is charged with murdering his child. The child in question died of suffocation ...

> [T]he defendant claims that the death was due to natural causes and accidental in character ... [B]oth English and American cases permit the prosecutor to introduce evidence of similar deaths of other children in the defendant's custody. Considered collectively, the aggregate number of incidents makes it objectively improbable that all the deaths were accidental ...

> [T]he prosecutor has invoked the doctrine of chances ... The question is not whether the defendant is the type of person who ... murders his relatives. The question is whether it is objectively likely that so many deaths could be attributable to natural causes.

UNCHARGED MISCONDUCT, § 4.01 at 4–5 (footnotes omitted). *See also United States v. Woods,* 484 F.2d 127, 135 (4th Cir.1973), *cert. denied,* 415 U.S. 979, 94 S.Ct. 1566, 39 L.Ed.2d 875 (1974). Further examples are sure to come before this Court with the adoption of Federal Rule of Evidence 404(b), as this rule has generated more reported decisions than any other rule. *Id.,* § 1.04 at 8.

### VI. *Lannan's Claim*

Finally, we turn to the facts of appellant's trial to determine whether the adoption of Rule 404(b) requires reversal in this case.

Donald Lannan, age twenty-three at the time of his arrest, was charged with one count of child molesting, a class C felony. Ind.Code Ann. § 35–42–4–3(c) (West 1986). The charging information alleged that on June 17, 1989, he engaged in sexual intercourse with V.E., age fourteen.

At trial, V.E. testified that she was spending the evening at her grandmother's house. She shared a room with T.W., her cousin of similar age. V.E. said Lannan came into the room and asked T.W. to "mess around with him," but T.W. refused. V.E. said Lannan then had intercourse with her.

T.W. testified that she was in the bedroom when Lannan came in late at night, and that Lannan had fondled her before moving on to V.E. She testified that Lan-

nan was naked, and that he had removed V.E.'s shorts. T.W. also said she heard V.E. telling Lannan to stop because it hurt.

Both girls also testified about an incident in Lannan's truck during the summer of 1988 in which he allegedly fondled both of them. And V.E. told the jury of submitting to sex with Lannan on at least three other occasions after the crime alleged. This testimony was neither detailed nor lengthy. V.E. said it happened once at defendant's grandmother's house, at "Aunt Belinda's", and at her house after defendant and his wife Debbie had moved in with V.E.'s family. "If he didn't do it with Debbie, he would came over and did it and had intercourse with me," she said. Record at 193. Testimony as to all of these uncharged acts was admitted pursuant to the depraved sexual instinct exception. Under the new rule announced today, this was an insufficient basis for admitting evidence of uncharged misconduct.

■ As we noted above, however, it does not necessarily follow that all testimony revealing uncharged misconduct was inadmissible. T.W.'s eyewitness account of the crime—including her allegation that Lannan fondled her before having intercourse with V.E.—helped complete the story of the crime in a way that incidentally revealed uncharged misconduct. Hence, her allegations as to Lannan's misconduct in the house were admissible under the theory of *res gestae*. *See Wilson v. State*, (1986), Ind., 491 N.E.2d 537.

■ The testimony regarding the incident in Lannan's truck is more troublesome. Had the State filed an additional count (or counts) charging Lannan with fondling V.E. (or both girls), their testimony would have been admissible as direct evidence of a fact in issue. However, these crimes and V.E.'s allegations of additional instances of intercourse were uncharged. As such, given our abandonment of the depraved sexual instinct exception, our inquiry is whether these prior acts were admissible under any 404(b) exception. We can find none without forcing a square peg in a round hole.

■ In determining whether the introduction of this evidence warrants reversal, we must assess the probable impact of the evidence upon the jury. *Timmons v. State* (1992), Ind., 584 N.E.2d 1108. Ordinarily, evidence of uncharged crimes of the character introduced in this case could be said to have a major impact on the jury. Today we are persuaded otherwise, however, in large measure because of the testimony of Alfred Sage, an uncle of V.E. and T.W. Sage testified that in May 1990, Lannan drove to the home where the molest occurred and shouted, "I'm going to f* * * them again." Record at 274. This declaration, coupled with the victim's testimony and T.W.'s corroboration, leads us to conclude that the impact of this other evidence on the jury was not of sufficient weight to require reversal.

We therefore affirm the judgment of the trial court.

DeBRULER, DICKSON, and KRAHULIK, JJ., concur.

GIVAN, J., concurs in result with separate opinion.

GIVAN, Justice, concurring in result.

I concur in the result of the majority opinion. I strongly disagree with the majority's abolition of the depraved sexual instinct rule. The majority opinion very accurately has set forth the reasons for the adoption of this rule and the long history of its usage in this State. I find no need to repeat the statements made in the majority opinion. Suffice it to say that based upon those reasons given, I believe the necessity to protect children from the devastating harm of molestation justifies the invocation of the rule.

I fully recognize, as stated by the majority, that in most cases the evidence of prior conduct probably will come in under accepted rules which the majority leaves intact. However, I do not believe this fact justifies the abrogation of the rule. I believe a jury is entitled to know that a defendant in a child molesting case has a history of sexual deviate conduct because of the heinous nature of the crime and the possible unbeliev-

ability of a small child. To me, the abrogation of this rule is an erosion, albeit small, of the protection of children. I would not diminish that protection one iota.

I concur with the majority in their affirmance of the conviction of appellant.