Ricky L. ROBEY, Appellant,

v.

STATE of Indiana, Appellee.

Michael LANE, Appellant,

v.

STATE of Indiana, Appellee.

Nos. 49S00–8801–CR–3, 49S00–8801–CR–18.

Supreme Court of Indiana.

June 12, 1990.

William F. Thoms, Jr., Indianapolis, for appellant Robey.

Arron E. Haith, Choate, Visher & Haith, Indianapolis, for appellant Lane.

Linley E. Pearson, Atty. Gen., Lisa Anne McCoy, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

Appellants Robey and Lane were arrested, along with Charles Blakemore, in con-

nection with the abduction of a woman and her two children and the sexual assault of the woman. Robey and Lane were represented by separate counsel, and both waived a jury trial and were tried to the court in a unified proceeding. Robey was found guilty of one count of rape, a class A felony, I.C. 35-42-4-1, one count of criminal deviate conduct, a class A felony, I.C. 35-42-4-2, and three counts of kidnapping, a class A felony, I.C. 35-42-3-2. On each of these five convictions, Robey received a fifty-year sentence. The sentences on the rape and criminal deviate conduct convictions were ordered served concurrently to each other and consecutively with the sentences imposed for the kidnapping convictions, which were all to run concurrently, resulting in a total obligation of one hundred years. Lane was likewise found guilty and sentenced on the same five counts and was likewise ordered imprisoned for one hundred years. Robey and Lane brought separate direct appeals of their convictions, again represented by separate counsel. Because these appeals involve common questions of law and fact, this Court now orders, *sua sponte*, that they be consolidated for consideration. Ind.R.A.P. 5(B).

The evidence produced at trial which tended to support the verdicts showed that at about 1:45 a.m. on March 4, 1986, Jerri Williams and her two young children were returning to their Indianapolis home in a Metro cab. The cab driver stopped to get change for Williams's twenty dollar bill at a liquor store and left the cab running because it was a cold night. Three men rushed the cab, one getting into the front seat and the others entering the back as Williams reached around to lock the back door. The man in the front seat told Williams that he had a knife and held something to her head, then told her to put her head down and not to scream or he would kill her children. They drove to an alley, where Williams was dragged out of the cab, stripped, and forced to perform fellatio on one man while simultaneously being subjected to anal intercourse by another. Williams testified that she was never allowed to see the faces of her attackers, but

that she heard them discussing taking turns with her. Williams was then subjected to simultaneous oral and vaginal copulations, and then to a third similar assault. She was then partially redressed and driven to another location, where she was taken from the cab and subjected to three simultaneous oral and vaginal or anal copulations. They drove to a third alley and three more simultaneous oral and vaginal or anal copulations took place. Williams was then returned to the cab and as they drove, the men discussed dropping off her and her children and disposing of the cab.

A man who had been sitting in a car parked next to the cab in the liquor store lot testified that he saw the man in the front seat hold something to Williams's head. After the cab drove off, he went into the liquor store and told the driver that his cab was gone. The driver notified the police, and several units were dispatched to search for the vehicle and its passengers. At 3:40 a.m., Lieutenant O'Connor of the Indianapolis Police Department passed a Metro cab which appeared to be occupied by four or five people and which had no lights on. He turned his car around and followed the cab. The cab pulled over and stopped, and three men jumped out and started running. O'Connor broadcast his location, and other cars involved in the search responded. Two of the men, later identified as Blakemore and appellant Lane, were brought down by a police dog from a responding canine unit. The third, later identified as appellant Robey, ran in a different direction and climbed a fence. He was pursued and wrestled to the ground by a police officer from another unit.

### I. Waiver of Jury Trial

At the final pre-trial hearing, appellants Lane and Robey filed written waivers of jury trial which had been signed by them personally. The trial court examined both as to their understanding of their right to have their guilt or innocence determined by a jury and their appreciation of what a waiver of that right meant. The court found that both were making their waivers

knowingly and voluntarily and set the matter for a bench trial. On the morning of trial, Lane made an oral motion to withdraw his waiver of a jury trial, in which Robey joined, and they now assert that the trial court committed reversible error by denying that motion. Lane's defense counsel stated the basis of the motion as follows:

> [Lane] would argue that at the time he made his waiver he did not knowingly and intelligently waive it at that time, although the Court did, in fact, go over uh, the matter. However, he believes that he uh, rationally [sic] made the decision and that it was not uh, carefully thought out by him and he has requested me uh, to ask that he be allowed to withdraw the waiver.

Upon motion of Robey's counsel, the foregoing argument was incorporated on behalf of Robey.

 The right to trial by jury, a fundamental right guaranteed by the Sixth Amendment of the federal Constitution and by Article 1, § 13 of the Indiana Constitution, may be waived by a knowing, intelligent, and voluntary waiver. *Jones v. State* (1988), Ind., 518 N.E.2d 479. Once the right has been effectively waived, withdrawal of the waiver rests within the discretion of the court. *Woodson v. State* (1986), Ind., 501 N.E.2d 409. The sole basis for appellants' motion to withdraw was that the waivers were not knowingly and voluntarily made. The trial court fully informed both Robey and Lane of their right to a speedy, public jury trial, examined them as to their understanding and appreciation of that right and of the consequences of waiving that right, and determined that each had made an effective waiver. A review of the transcripts of the waiver hearing and the hearing on the motion to withdraw shows no assertion or evidence that a reevaluation of the waivers was necessary based on a change in circumstances nor any indication that appellants had somehow been misled. The trial court did not err in denying their motion to withdraw the waivers. *Id.*

## II. Admission of Statement

Robey claims that the trial court erred in admitting evidence of certain statements made by him to police officers on the way to the police station following his arrest. Officer Grisell testified that he chased and tackled Robey, then advised him of his *Miranda* rights. Officer Carson witnessed this advisement and testified that when asked if he understood these rights, Robey nodded affirmatively and muttered, "yeah." Both officers testified that Robey was then put into a police car and was at no time asked any questions. Over Robey's objection, Officer Carson testified that during the ride to the police station, Robey made several unsolicited remarks including "I really stuck it to her," "They say if you can't do the time, don't do the crime, so I guess I have to do the time," and "It was, shit, I've been trying to get it for two months." Officer Carson testified further that she believed she responded to some of Robey's comments. The trial court found that Carson's responses were not an attempt to question Robey and that his statements were voluntary and admissible.

 Statements made freely, voluntarily, and spontaneously and not in response to questioning or its functional equivalent by a person in custody are admissible in evidence whether or not that person has been advised of his *Miranda* rights. *Rhode Island v. Innis*, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980); *New v. State* (1970), 254 Ind. 307, 259 N.E.2d 696. Further, one who has been advised of his *Miranda* rights may waive them expressly by an explicit oral or written waiver or impliedly by an act of speaking in a manner reflecting a desire to give information after an acknowledgement of an understanding of those rights. *Shelton v. State* (1986), Ind., 490 N.E.2d 738; *see also Cook v. State* (1989), Ind., 544 N.E.2d 1359.

Here, Robey was advised of his rights and he acknowledged that he understood them. He was then placed alone in the back seat of the police car with Officers Grisell and Carson in front. The officers did not question him or attempt to engage

him in conversation. Appellant's first remark was entirely unsolicited, and the other two do not appear to be responsive to anything which Officer Carson might have said. To determine whether a statement was given voluntarily or whether it was induced by violence, threats, promises, or other improper influences, this Court looks to all the surrounding circumstances. *Shelton*, 490 N.E.2d 738. There is no evidence that Robey's statements were the product of any coercion by the police. They are, rather, the kind of spontaneous, voluntary commentary on his situation admissible under *New*. The trial court properly admitted testimony regarding the statements.

### III. Sufficiency of the Evidence

■ Robey and Lane contend that the evidence was insufficient to support their convictions. The standard for reviewing the sufficiency of evidence is well settled. This Court will not reweigh the evidence nor judge the credibility of the witnesses. We look, instead, to the evidence most favorable to the verdict and to all the reasonable inferences to be drawn therefrom. If, from that viewpoint, there is evidence of probative value from which a reasonable trier of fact could infer guilt beyond a reasonable doubt, the conviction will be affirmed. *James v. State* (1976), 265 Ind. 384, 354 N.E.2d 236. This standard of review is the same whether the conviction is supported by direct or circumstantial evidence. *Brooks v. State* (1986), Ind., 497 N.E.2d 210. Conflicts between the testimony of defense and State witnesses is "for final resolution by the trier of fact and not an appellate court, unless it may be said that the testimony of State's witnesses was inherently improbable and runs counter to human experience." *Olinger v. State* (1984), Ind., 463 N.E.2d 1385, 1387.

■ Robey argues that there is insufficient evidence to support his convictions for kidnapping based on his own testimony and that of Lane that he was not present when the cab was stolen, but was picked up by Blakemore and Lane a few minutes later. He also attacks the validity of his convic-

tions on the rape and sexual deviate conduct charges based on his testimony and that of Lane that only Blakemore had intercourse with Williams and based on Williams's testimony that she was never allowed to see the faces of her attackers and that therefore she had to assume that all three men participated in the multiple sexual assaults.

Williams and her son testified that three men entered the cab at the liquor store parking lot. Williams testified that each of the three times she was removed from the cab, she was forced to perform three separate acts of fellatio on a first man while a second man knelt on the ground and entered her from behind. She also testified that the men discussed taking turns with her. Lieutenant O'Connor saw three men exit the cab in which Williams and her two children were found. Two of the men ran in the same direction, and O'Connor watched as a police dog brought them down. The other man split off and ran in a different direction. O'Connor dispatched this information to incoming cars, and this man, Robey, was chased and apprehended a few hundred yards from the stolen cab by an officer responding to the radio call. At the time of his arrest, Robey was carrying several blank Metro taxi receipts and the knees of his pants were wet and caked with mud, consistent with having knelt on the soft ground. Robey testified that his pants had become muddied when he was tackled by Officer Grisell. On the way to the police station, Robey stated that he "really stuck it to her," and made the other remarks discussed in the previous section which indicated his involvement in the crimes. Given this state of the evidence, a reasonable trier of fact could conclude that three men entered and drove away in the cab and could infer that at each location, each of these men had intercourse with Williams and had fellatio performed upon him and that Robey was one of those men, despite Williams's inability to identify the faces of her attackers. The evidence was sufficient to support his convictions.

■ Lane also asserts that there is insufficient evidence to support his convic-

tions. As did Robey, he claims that his identity as one of the perpetrators was not sufficiently established. He also claims that there was insufficient evidence that a weapon was used in the commission of the crimes. Lane was one of the two men that Lieutenant O'Connor observed exiting the cab and being brought down by the police dog. The knees of his pants were also wet and caked with mud. Lane testified that the condition of his pants was the result of having been dragged down by the dog.

Lane admitted that he had driven the cab and that a knife entered into evidence had been taken from him at his arrest, although he stated that he had never removed the knife from his pocket nor mentioned to Williams that he had it. Williams testified that the man who entered the front seat and who drove the cab away held a brown-handled object and told her that he had a knife and that he would kill her children if she screamed. She also testified that she heard the sound of a push-button knife opening. Both the witness to the abduction and Williams's son testified that something was held to Williams's head before the cab was driven away. At trial, Williams was shown a knife taken from one of the suspects and she testified that the handle looked a little bit like the object she had seen in her kidnapper's hand. The police also found a knife and kneeprints at the scene of the last assault. There was sufficient evidence of the use of a knife in the commission of these crimes.

■■■ Lane concedes that the uncorroborated testimony of a victim is sufficient to sustain a conviction for rape or criminal deviate conduct, but asserts that Williams's testimony is inherently unbelievable. He bases this assertion on the conflict between Williams's testimony that her attackers ejaculated during the numerous sexual assaults and the results of oral washings and vaginal smears taken from Williams following the assault, which revealed the presence of no sperm or seminal fluid. When Williams was asked how she knew the men had ejaculated, she answered that she heard them talking about it and that they shook the seminal fluid over her head and on her face. The emergency room physician testified that his examination of Williams showed the presence of muddy debris on her extremities and dirt on her external genitalia. He also observed several abrasions at the skin which forms the juncture of the vagina and the perianal area indicating some kind of recent irritation, but saw no evidence of trauma to the area. He testified that the abrasions, although minor, would be consistent with incidents of repeated forced intercourse. The negative laboratory results do not render Williams's testimony so unbelievable as to necessitate the reversal of Lane's convictions. She testified that her belief that her assailants ejaculated was based on what they said to each other about it and the fact that they shook fluid on her face and head, not based on the sensations of the body cavities that were the subject of the tests. The evidence is sufficient to sustain Lane's convictions.

### IV. Appropriateness of Sentence

■■■ Lane claims that his sentence is manifestly unreasonable and asks this Court to revise his sentence pursuant to Indiana Rule for the Appellate Review of Sentences 2(1). A trial court which imposes an enhanced sentence is required to make a specific and individualized statement of the reasons supporting the deviation from the standard sentence, and if the court's statement is insufficient, the case will be remanded for a more specific statement or for the imposition of the standard sentence. *Frappier v. State* (1983), Ind., 448 N.E.2d 1188. Regarding the sufficiency of a sentencing statement, this Court has stated:

[I]t is clear, that in every case where increased sentences are imposed the record must show that careful consideration commensurate with the denial of liberty involved has been given to the defendant. Due care must be taken to demonstrate a thorough and thoughtful sentencing decision supported by specific and detailed reasons and an indication that the court has considered the goal of rehabilitation. The record must show

that the determination of the increased sentence was based upon a consideration of the facts of the specific crime, the aggravating and mitigating circumstances involved and the relation of the sentence imposed to the objectives which will be served by that sentence.

*Smith v. State* (1985), Ind., 474 N.E.2d 71, 73 (emphasis omitted) (quoting *Abercrombie v. State* (1981), 275 Ind. 407, 417 N.E.2d 316).

 We do not reach the question of whether Lane's sentences were reasonable because we find that the trial court's statement in support of the imposition of enhanced sentences was insufficient under the standard set forth above. We therefore remand his cause to the trial court with instructions to enter more specific findings, if any, to support the enhanced sentence or to reduce Lane's sentences to the statutory standard. Because the sentence enhancements imposed on Robey suffer the same infirmities as do those imposed on Lane, we order, *sua sponte*, that his cause likewise be remanded for the entry of more specific findings supporting enhanced sentences or for the imposition of standard sentences. *Page v. State* (1980), 274 Ind. 264, 410 N.E.2d 1304.

Robey and Lane were convicted of five class A felonies, each carrying a presumptive term of thirty years. The trial court then enhanced each sentence by twenty years and imposed fifty-year sentences on each count, the maximum sentence possible under law. As to each appellant, the court ordered that the sentences on the three kidnapping convictions run concurrently to each other and that the sentence on the rape conviction run concurrently to the sentence on the criminal deviate conduct conviction. The court found that the nature of the sex crimes were such that those sentences should be served consecutively to those on the kidnapping convictions.

The trial court did not make an individualized statement regarding the sentences each appellant was to receive and why those sentences were appropriate for the particular offense and offender. Rather, the court made the following blanket statement of reasons for imposing on both appellants maximum sentences on five counts and ordering the kidnapping sentences to be served consecutively to the sex crime sentences:

The Court now considers all information that's been submitted to the Court, pleadings, filings, petitions and evidence from the witnesses, as well as the State and the attorneys. Having done that the Court also considers, in determining what sentence to impose, as to each defendant, the risk defendant would commit other crimes, the nature and circumstances of the crimes that were committed, the prior criminal record, or lack it, of each, their character and condition. Having done so show the judgment and sentencing of the Court will be that defendants, each of them, will receive a stated term or penalty on each count of thirty (30) years. On the Rape and Criminal Deviate Conduct the Court is also going to make a determination of the aggravating factors that the statute requires me to consider. Show an additional twenty (20) years will be given on each and those two (2) terms, as to each defendant. Court will also make a determination aggravating factors on each of the Kidnapping charges are warranted.... As far as the aggravating factors, the Court does make the determination that each of [the] defendants are [sic] in need of correctional or rehabilitative treatment that can best [be] obtained through imposition of a sentence at the Department of Corrections. And it's the Court's determination that imposition of a reduced sentence would depreciate the seriousness of the offenses that were committed. And the Court, again to statute, does take into consideration the age of two (2) of the victims that were involved. With children involved, I think, regardless of whatever the participation was, whether the acknowledgement of the defendants in the participation of these sexual offenses, that those were definitely such crimes that were committed that that would warrant consecutive sentencing on the sexual offenses. I do

note the mitigating factors that each of you have pointed out as far as the age of the defendants and their lack of prior felonies as adults.

At the sentencing hearing prior to the sentencing order, the court stated that it had also considered a petition presented on Lane's behalf showing support for Lane and signed by numerous individuals in the community.

The perfunctory recitation of statutorily mandated considerations and the conclusory language used in this sentencing order, with so little reference to the specific nature of the offenses and virtually no reference to the character of the offender, is not sufficient to afford an adequate review of the appropriateness of the sentence imposed on a criminal defendant. *Frappier*, 448 N.E.2d 1188. It is the more egregious that two men were sentenced under this order. The convictions of appellants Robey and Lane are affirmed, and both causes are remanded to the trial court for the entry of individual, specific findings supporting the imposition of enhanced sentences or, in the alternative, for the reduction of the sentences to the standard sentences provided for by statute.

SHEPARD, C.J., and GIVAN, PIVARNIK and DICKSON, JJ., concur.