**ERIE INSURANCE COMPANY,**
Appellant (Defendant),

v.

**Ramona HICKMAN, by her next friend, Nancy SMITH, and Nancy Smith, Individually, Appellees (Plaintiffs).**

**No. 29A02–9006–CV–318.**

Court of Appeals of Indiana,
Second District.

Oct. 29, 1991.

Rehearing Denied Jan. 17, 1992.

Robert A. Smith, Michael P. Bishop, Bishop Smith & Bishop, Indianapolis, for appellant.

John David Henry, Rynearson & Associates, Indianapolis, for appellees.

BUCHANAN, Judge.

## CASE SUMMARY

Defendant-appellant Erie Insurance Company (Erie) appeals the award of punitive damages to plaintiffs-appellees Ramona Hickman (Ramona) and Nancy Smith (Smith) [hereinafter collectively referred to as Appellees].

We reverse.

## FACTS

The facts most favorable to the jury's verdict reveal that on March 24, 1986, Ramona, Smith's daughter, was driving Smith's car and became involved in an accident. Ramona was waiting at an intersection to turn left, and when the traffic signal turned yellow, Ramona proceeded to turn. A vehicle driven by Gregory Davis (Davis) proceeded into the intersection while the traffic light was yellow and struck Smith's car.

Ramona received a slight contusion to her head, but was otherwise uninjured. Smith's car received approximately $1,500 in damages while Davis' car received approximately $3,000 in damages. Smith was insured by Erie, and Davis claimed he was also insured. Smith had purchased only liability and uninsured motorist insurance for the vehicle Ramona was driving, having chosen not to carry collision insurance for the vehicle involved in the accident.

Smith filed a report with Erie, and Erie responded that, based on Smith's report, Davis was at fault and Smith should collect from Davis' insurance company. After attempting to contact Davis' insurance company, Smith began to believe Davis was not insured. She contacted Erie, informing the company that Davis was not insured and that she wanted to make a claim under the uninsured motorist provision of her policy.

After Smith's initial report, Erie conducted an investigation of the accident, interviewing Davis and Ramona, and reviewing the police report of the accident. After the investigation, Erie's claim adjuster determined that Ramona was at fault and had caused the accident, and therefore decided that Erie was not liable for the damages to Smith's car under the policy. Erie then paid Davis over $2,000 for the damages to his vehicle.

Smith obtained counsel, and Smith's counsel informed Erie that Smith was seeking arbitration pursuant to Smith's policy for Smith's claim under the uninsured motorist provision. On July 24, 1986, Smith's counsel indicated he would supply the name of an arbitrator. Smith's counsel did not

select the arbitrator until September 22, 1987.

During the fourteen month period in which Erie received no communication from Smith or her counsel, Erie's claim adjuster assumed Smith had chosen not to pursue the matter and closed the claim file. After Smith's counsel named an arbitrator in September of 1987, Erie reopened the file but was unable to reestablish contact with Davis after repeated efforts.

Appellees brought suit against Erie on March 18, 1988, seeking compensatory damages for Ramona's injury and the damages to Smith's car, as well as punitive damages for Erie's handling of the matter. After a jury trial, Ramona received compensatory damages of $85.75 and punitive damages of $1,000. Smith received compensatory damages of $2,064.97 and punitive damages of $10,000.

### ISSUE

Whether the award of punitive damages was supported by sufficient evidence?

### DECISION

■ PARTIES' CONTENTIONS—Erie argues that its conduct was not sufficiently egregious to warrant the imposition of punitive damages. The Appellees reply that the evidence demonstrates Erie acted in bad faith and that the jury correctly granted punitive damages.

CONCLUSION—The award of punitive damages was improper.

In reviewing the sufficiency of the evidence to support an award of punitive damages, we will not reweigh the evidence or reassess the credibility of the witnesses. The imposition of punitive damages will be affirmed if, considering the probative evidence and the reasonable inferences arising therefrom, a reasonable trier of fact could conclude that such damages were proven by clear and convincing evidence. *Bud Wolf Chevrolet, Inc. v. Robertson* (1988), Ind., 519 N.E.2d 135.

Our supreme court in *Travelers Indem. Co. v. Armstrong* (1982), Ind., 442 N.E.2d 349, determined that punitive damages should not be allowed upon evidence that is merely consistent with a hypothesis of malice, fraud, gross negligence or oppressiveness. Instead, *additional* evidence is required that is inconsistent with the hypothesis that the tortious conduct was a result of a mistake of law or fact, honest error of judgment, overzealousness, mere negligence or some other noniniquitous human failing. The court also concluded that punitive damages are recoverable only upon proof by clear and convincing evidence.

In *Orkin Exterminating Co. v. Traina* (1986), Ind., 486 N.E.2d 1019, the supreme court expanded further on the evidence needed to sustain a punitive damages award. The court explained:

"Just as the defendant in a criminal action is cloaked with a presumption of innocence, the defendant, in a claim for punitive damages, is cloaked with the presumption that his actions, though tortious, were nevertheless noniniquitous human failings, i.e. that he is *not guilty of the quasi-crime alleged.* Were it otherwise, there would be no restraint upon the award of punitive damages *upon conflicting inferences.*"

*Id.* at 1023 (second emphasis supplied).

The supreme court reaffirmed the need for additional evidence in *Bud Wolf, supra:*

"We stated [in *Travelers*] that punitive damages in contract actions may be allowable upon evidence proving malice, fraud, gross negligence or oppressiveness *if accompanied by further evidence* 'inconsistent with the hypothesis that the tortious conduct was the result of a mistake of law or fact, honest error of judgment, overzealousness, mere negligence or other noniniquitous human failing.' *Travelers*, 442 N.E.2d at 362."

*Bud Wolf, supra* at 137 (emphasis supplied).

Applying the supreme court's standards, in order to support the award of punitive damages, the record must contain evidence from which the jury could infer Erie's actions were tortious and there must also be additional evidence which excludes the possibility that the tortious conduct was the

result of some "noniniquitous human failing." We therefore consider the evidence admitted at trial, without weighing it, to determine whether the rigorous supreme court standard has been met.

The Appellees assert the record "is replete with references to conduct alleging 'bad faith,'" *Appellees' Brief* at 6. Smith testified that Erie was uncooperative in its handling of her claim, and that Erie had cancelled her insurance in late 1987, claiming she had failed to pay her premiums, while she asserted she had paid her premiums.[1] The Appellees also point to the fact that Erie refused to pay their claim, but paid Davis $2000, even though he had no insurance and the Appellees claimed he was at fault.

While this evidence could, arguably, support a determination that Erie acted with malice, fraud, gross negligence or oppressiveness, the evidence is also consistent with a hypothesis that Erie's actions were the result of a mistake of fact, a negligent investigation and handling of Smith's claim, or that Erie's agents were merely overzealous in their actions. As the supreme court stated in *Bud Wolf, supra,* there must be *further* evidence inconsistent with the inference that the conduct was the result of some noniniquitous human failing. Conflicting inferences are not enough. *Orkin, supra.*

■ The Appellees' claim that Erie's indifference to Davis' insurance status supports the award of punitive damages is based on Smith's mistaken belief that the uninsured motorist provision of her insurance policy covered damage to her vehicle if the driver of *her* vehicle was at fault in an accident with an uninsured motorist. The policy provided that Erie would not cover the insured for any accident if the insured was more than 50% at fault. *Record* at 597. If Ramona was more than 50% at fault, then, pursuant to the policy, the damage would not be covered even if Davis were uninsured. Davis' insurance status, after Erie determined Ramona was at fault, was therefore not relevant and Erie's payment to Davis alone cannot, as a

matter of law, support an award for punitive damages.

Our search for *any* evidence which is inconsistent with a theory that Erie's agents merely made mistakes or acted negligently is unavailing. Any probative evidence would be sufficient because we will not reweigh the evidence. As the evidence supports conflicting inferences, the presumption that Erie's actions, though tortious, were the result of noniniquitous human failings, mandates a conclusion that the evidence is insufficient, as a matter of law, to support punitive damages. *See Orkin, supra.*

The situation we consider is substantially similar to that considered by this court in *Miller v. Farmers Ins. Group* (1990), Ind. App., 560 N.E.2d 1261, which dealt with an appeal from the entry of summary judgment against a plaintiff's claim for punitive damages. The evidence established that the plaintiff was involved in an accident and had filed a claim with his insurance carrier. After reviewing the plaintiff's report, the carrier indicated it believed the plaintiff was not at fault. After further investigation, however, the carrier determined that the plaintiff was more than fifty percent at fault and therefore, under the terms of his policy, the carrier was not liable for the plaintiff's damage. The trial court granted the insurance company's motion for summary judgment, and the plaintiff appealed.

This court concluded:

"We believe the case exemplifies the exact situation and distinction that *Armstrong* sought to focus upon.... There is no evidence that is *inconsistent* with the hypothesis that the insurer's conduct, if tortious at all, was not merely the result of negligence, overzealousness, etc. Thus, there was no clear and convincing evidence to support a claim for punitive damages."

*Miller, supra* at 1263 (emphasis in original).

Although *Miller* involved the entry of summary judgment, its analysis of the le-

---

1. No claim was made for wrongful cancelation of insurance.

gal sufficiency of facts almost identical to those we consider is persuasive.

The evidence in the record is also comparable to the evidence considered by the supreme court in *Armstrong, supra.* In *Armstrong*, the supreme court concluded that although the evidence was consistent with a hypothesis of fraudulent intent, it was nonetheless insufficient to support an award of punitive damages because the evidence was not inconsistent with a hypothesis of honest, human error. *Id.* at 364. Likewise, while the evidence against Erie could perhaps establish fraudulent, or some other iniquitous intent, it is not *also* inconsistent with a hypothesis of honest, human error. The additional quantum of evidence required by the supreme court is simply not present here.

Based on a careful review of the record, and giving due deference to the principle that we will not reweigh the evidence, we must conclude the record does not support an award of punitive damages. *See Armstrong, supra; Miller, supra.*

Judgment reversed and remanded for further proceedings consistent herewith.

SHIELDS, J., concurs.

STATON, J., dissents with opinion.

STATON, Judge, dissenting.

I respectfully dissent. While the Majority pays lip service to our supreme court's enunciation of the standard of review for the challenge to a punitive damages award, it nonetheless disregards the standard and engages in a selective reweighing of the evidence.

The Majority relies upon *Travelers Indem. Co. v. Armstrong* (1982), Ind., 442 N.E.2d 349, where our supreme court adopted the clear and convincing evidence standard for proof of punitive damages. The court in *Travelers* stated:

[P]unitive damages should not be allowable upon evidence that is merely consistent with the hypothesis of malice, fraud, gross negligence or oppressiveness. Rather some evidence should be required that is inconsistent with the hypothesis

that the tortious conduct was the result of a mistake of law or fact, honest error of judgment, over-zealousness, mere negligence or other such noniniquitous human failing.

*Id.* at 362.

This heightened evidentiary standard does not, however, permit this court to substitute its judgment for that of the jury in this case.

Whatever standard of proof is required at the trial level, if it can be said that either of two conclusions can be reasonably drawn from the evidence, it is immaterial, upon appeal, that one of such conclusions appears to be more likely than the other, and we are bound by the finding of the trier of fact.

*Orkin Exterminating Co., Inc. v. Traina* (1986), Ind., 486 N.E.2d 1019, 1022. Thus, our supreme court observed:

While both *Traina* and *Travelers* emphasize the need for "clear and convincing" proof tending to approach the certainty required in criminal convictions, the standard of appellate review for sufficiency on the issue of punitive damages should impose neither greater judicial scrutiny nor lesser deference to jury determinations than in review of other sufficiency questions.

*Bud Wolf Chevrolet, Inc. v. Robertson* (1988), Ind., 519 N.E.2d 135, 137.

The rule pronounced in *Travelers* "is nothing more than the rule applicable in criminal trials resting entirely upon circumstantial evidence, i.e. the evidence must exclude every reasonable hypothesis of innocence." *Orkin, supra,* at 1023. However, the standard of review for determining sufficiency of the evidence in a criminal case is the same whether the conviction is supported by direct or circumstantial evidence; we do not reweigh evidence or judge the credibility of witnesses. Rather, we look to the evidence most favorable to the verdict and to all reasonable inferences to be drawn therefrom. *Robey v. State* (1990), Ind., 555 N.E.2d 145, 149. We must affirm the judgment if there is evidence of probative value from which a reasonable trier of fact could infer guilt beyond a

reasonable doubt. *Id.* The sufficiency standard for punitive damages is no different.

The Majority concludes that the jury could not have inferred that the actions of Erie and its agents were inconsistent with noniniquitous human behavior. The evidence supports a contrary finding.

Could the jury have concluded from the evidence that a deceptive scheme was purposely employed to cover up a mistake of an Erie adjuster or fellow employee? Or, could the jury have concluded from the evidence that Erie had decided not to pay its insured's claim regardless since it had: 1) already paid $2,000.00 to Davis by mistake which was the reserve for the claim and 2) Smith's property damage claim was probably too small for her to bring a legal action against Erie? Since the subjective state of mind of Erie's agents is the real issue, it is the evidence introduced and admitted in evidence at trial that must be reviewed to answer these questions.

The jury heard this evidence: After the collision at the intersection, Smith contacted her insurance company, Erie Insurance, and gave them the information about the accident. Erie Insurance informed her that she only had uninsured motorist coverage. She was further informed by Erie that Davis, the other driver, was at fault and that she should contact his insurance company. After repeated attempts to contact Davis' insurance company, she finally contacted his insurance agent who advised her that Davis had not been insured since December, 1985. The accident occurred March 24, 1986. Later, Smith contacted Nola Nooe at Erie Insurance to advise her that Davis was uninsured. Nooe refused to accept Davis' uninsured status and insisted that Davis was insured. Smith received no cooperation from Erie Insurance regarding her claim. However, in the meantime, Erie had paid Davis $2,000.00 for the damage to his car.

Later, Smith was advised that a further investigation by Erie Insurance had indicated that she was at fault and that her claim was denied. Four months having passed since the accident, Smith had to obtain a loan to repair the damage to her car so that she would have transportation to and from work at Indiana Bell Telephone Company as a design installation engineer. She drove her car for three months without being insured even though she had paid her premiums to Erie Insurance Company for coverage. Though Erie Insurance Company cashed her premium checks, it concealed the cancellation of Smith's policy from Smith and her insurance agent.

Eventually, Smith had to obtain legal counsel to force Erie Insurance to act on her insurance claim. Arbitration was delayed for fourteen months, but Erie Insurance did not do anything to expedite the arbitration claim of its insured. Rather than dispose of the small pending claim, it closed the file without further inquiry. When the jury heard this evidence and the testimony regarding the scant investigation of the claim made by Erie Insurance, the jury could have concluded that there was clear and convincing evidence of the subjective state of mind to cover up a mistaken payment of $2,000.00 to Davis and to ignore Smith's valid but small insurance claim. The jury could have considered that four years later was too long and too late.

The Majority states:

> While this evidence could, arguably, support a determination that Erie acted with malice, fraud, gross negligence or oppressiveness, the evidence is also consistent with a hypothesis that Erie's actions were the result of a mistake of fact, a negligent investigation and handling of Smith's claim, or that Erie's agents were merely overzealous in their actions.

At 323.

Thus, the Majority acknowledges that "either of two conclusions can be reasonably drawn from the evidence," but in refusing to be "bound by the finding of the trier of fact," has ignored the clear mandate of the supreme court. *Orkin, supra,* at 1022. I would affirm the judgment of the trial court.