**Raymond L. SHACKELFORD,**
**Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 08A05–9302–CR–67.**

Court of Appeals of Indiana,
Fifth District.

Nov. 22, 1993.

---

Jessie A. Cook, Hellmann Cook & Alexander, Terre Haute, for appellant-defendant.

Pamela Carter, Atty. Gen., Cynthia L. Ploughe, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee-plaintiff.

BARTEAU, Judge.

Raymond L. Shackelford appeals his convictions of two counts of child molesting, Class B felonies, and two counts of incest, Class D felonies, raising the following issues:

1. Whether the trial court erred in admitting depraved sexual instinct evidence;

2. Whether the evidence is sufficient to support the the convictions of Counts II and IV; and

3. Whether the trial court erred in enhancing Shackelford's sentences on Counts I and II.

### FACTS

The charges against Shackelford arose from incidences occurring between August, 1990, and July, 1991, involving Shackelford's then seven-year-old grandson, J.S., and then five-year-old granddaughter, N.S. J.S. and N.S. stayed with Shackelford while Shackelford's daughter, the mother of J.S. and N.S., was in prison serving a one year sentence. During that time, Shackelford made J.S. perform fellatio on him and inserted his penis and his finger in J.S.' anus. Shackelford also touched and kissed N.S. on one of her "private parts" and made N.S. touch and kiss his "private parts."

Other facts will be presented as necessary.

### DEPRAVED SEXUAL INSTINCT EVIDENCE

■ Shackelford's daughter, the mother of J.S. and N.S., testified that Shackelford had molested her from the time she was eleven years old until she reached the age of fourteen or sixteen years. Shackelford objected to this evidence on the grounds that a proper foundation had not been laid for its admission. He did not object on the grounds that extrinsic offense evidence is generally not admissible. Shackelford now argues that in light of the Indiana Supreme Court's decision in *Lannan v. State* (1992), Ind., 600 N.E.2d 1334, the evidence showing a depraved sexual instinct was improperly admitted and he is entitled to a new trial. In *Lannan,* the court abolished the depraved sexual instinct exception to the general rule that evidence of extrinsic offenses is not admissible to prove that a defendant acted in conformity with a particular trait. *Id.* at 1339. Adopting Federal Rule of Evidence 404(b), the court noted that evidence of prior sexual misconduct would be admissible if it tended to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake. *Id.*

It is clear from reading the record in this case that the extrinsic evidence of Shackelford molesting his daughter was introduced only to show a depraved sexual instinct. It was not properly admitted to prove intent, identity, or for any of the other purposes set out in Fed.R.Evid. 404(b), because those were not at issue in this case. Thus, if the *Lannan* rule applies to Shackelford's case, the evidence was erroneously admitted and we would need to determine whether the error warranted a new trial.

The rule announced in *Lannan* is applicable to all cases pending on appeal at the time *Lannan* was decided and in which the issue was properly preserved by objecting to the evidence at trial. *Ried v. State* (1993), Ind., 615 N.E.2d 893; *but see Ried v. State* (1993), Ind.App., 610 N.E.2d 275, 281 (Barteau, J. dissenting). *Lannan* was decided after Shackelford's case was tried, but Shackelford did not make a proper objection at trial to preserve the issue. At trial, he objected to the admission of the evidence for lack of a sufficient foundation. He did not object to the admissibility of the evidence as evidence of prior misconduct. On appeal, a party is restricted to arguing the issues raised within the scope of the objection at trial. *Chandler v. State* (1991), Ind., 581 N.E.2d 1233. Because Shackelford did not properly preserve the issue at trial, he has waived any error with regard to admission of depraved sexual instinct evidence and is not entitled to the benefit of the *Lannan* decision.

## *SUFFICIENCY*

Shackelford next raises the issue whether the evidence is sufficient to sustain his convictions of Counts II and IV, the offenses against N.S. Count II charged that Shackelford "performed deviate sexual contact [sic] with [N.S.], a child under the age of twelve years...." (R. 8). Count IV charged that Shackelford "engage[d] in deviate sexual contact [sic] with another person ... knowing said other person is related to [him] biologically as a grandchild." (R. 14). Shackelford argues that the evidence is not sufficient to prove he engaged in sexual deviate conduct with N.S.

Sexual deviate conduct is defined as "an act involving: (1) a sex organ of one person and the mouth or anus of another person; or (2) the penetration of the sex organ or anus of a person by an object." Ind.Code 35-41-1-9. Shackelford contends that there is no evidence of contact with N.S.' sex organ or anus, and no evidence that N.S. had contact with his sex organ. Review of insufficient evidence claims encompasses neither reweighing the evidence nor judging the credibility of witnesses. Rather, the appellate court will consider only the evidence most favorable to the verdict, and any inferences reasonably drawn therefrom. A verdict supported by substantial evidence of probative value will be affirmed. *Pointer v. State* (1992), Ind. App., 585 N.E.2d 33, 34.

The only evidence introduced to prove sexual deviate conduct was the testimony of N.S.:

Q. ... Can you tell me, [N.S.], what happened with your grandfather?

A. Yeah.

Q. Okay. Do you know what a pee pee is? Tell me what it is.

A. [No recorded response]

Q. Okay. Did you ever see your grandfather's pee pee?

A. [No recorded response]

Q. You have to answer out loud.

A. Yeah.

Q. Okay. Can you tell me how you happened to see it? Did grandpa do something with it?

A. Yeah.

Q. What'd he do? What'd he do, [N.S.]? What'd he do with his pee pee? [N.S.], can you—Can you point? Were you ever touched by his pee pee?

A. Yeah.

Q. Where? Where were you touched? Did you touch his pee pee? Did you touch it?

A. He made me. He made me touch it.

Q. And how did you touch it; with what part of your body?

A. My hands.

Q. Okay. Okay. Did you touch it with any other part of your body or did it touch—Did the pee pee touch you any place else?

A. Yeah.

Q. Where? Where'd it touch you, [N.S.]?

A. He touched me on one of my private parts.

Q. The private parts. Oh, where are your private parts, [N.S.]? Tell me

what you mean by that. Where are they? Your private parts? I have to understand, and these good people have to understand that you know what that is, private parts. What is that? Where is it? Can you tell me?

A. [No recorded response]

Q. Okay. Tell me. Just point. Is it up here on your head? Private parts, are they on your head?

A. [No recorded response]

Q. You have to answer out loud.

A. No.

Q. No. Well show me where they are please. Just point. Are you pointing?

A. Here.

Q. And?

A. Right here. Right here.

Q. Okay.

[The record reflects that N.S. pointed to her breast area, her groin area, and her buttock area.]

Q. Did your grandfather—Did grandpa—Did he ever kiss you?

A. Yeah.

Q. Okay, and did that ever have anything to do with your private parts, when he kissed you?

A. Yeah.

Q. I didn't hear you.

A. Yeah.

Q. Yeah. Did he kiss you on your private parts?

A. Yeah.

Q. Okay. Did you ever kiss your grandpa?

A. Yeah.

Q. Did he have you kiss him?

A. Yeah.

Q. Where did you kiss him? Does your grandpa have private parts, too?

A. Yeah.

Q. Uh huh. Did you ever kiss him there?

A. Yeah.

Q. Okay.

(R. 420–423).

We agree with Shackelford that this evidence is insufficient to prove the occurrence of an act involving the sex organ of one person and the mouth or anus of another person. N.S. identified her "private parts" as the breasts, groin and buttocks. She also testified that Shackelford touched *one* of her private parts with his penis and that he kissed her private parts. However, she did not indicate *which* private part Shackelford touched. Thus, because N.S. included "breasts" in her identification of "private parts," there is no evidence here from which the jury could infer beyond a reasonable doubt that Shackelford engaged in an act involving his penis and N.S.' anus or an act involving his mouth and N.S.' genitalia or anus. Likewise, N.S. testified that she kissed Shackelford's private parts, but did not identify his "private parts" as his penis. Thus, there is no evidence from which the jury could infer that N.S. put her mouth on Shackelford's penis.

Clearly N.S.' testimony establishes inappropriate touchings by Shackelford and would be sufficient to sustain a charge of child molesting for fondling or touching pursuant to I.C. 35–42–4–3(b). However, the State charged Shackelford with child molesting for engaging in deviate sexual conduct pursuant to I.C. 35–42–4–3(a) and with incest for engaging in deviate sexual conduct pursuant to I.C. 35–46–1–3(a). In the absence of any evidence from which it can be inferred beyond a reasonable doubt that Shackelford engaged in conduct involving his mouth and N.S.' genitalia, his penis and N.S.' mouth or anus, or N.S. mouth and his penis, the convictions for child molesting and incest involving N.S. cannot stand.

### SENTENCING

■ Shackelford argues that the trial court did not give an adequate statement of its reasons for and considered improper aggravating circumstances in enhancing the presumptive sentences for Count I and Count II. Because we reverse Shackelford's conviction of Count II, we review

only Shackelford's sentence on Count I. The trial court sentenced Shackelford to serve 15 years in prison on his conviction of child molesting, five years longer than the presumptive ten-year sentence.

When the trial court imposes an enhanced sentence, it is required to make a specific and individualized statement of the reasons supporting the deviation from the standard sentence. *Robey v. State* (1990), Ind., 555 N.E.2d 145, 150. "The record must show that the determination of the increased sentence was based upon a consideration of the facts of the specific crime, the aggravating and mitigating circumstances involved and the relation of the sentence imposed to the objectives which will be served by that sentence." *Id.* at 150–151 (quoting *Smith v. State* (1985), Ind., 474 N.E.2d 71, 73 (emphasis omitted)). A "perfunctory recitation" and conclusory listing of the factors mandated by statute to be considered is not sufficient to afford an adequate review of the appropriateness of the sentence imposed on a criminal defendant. *Robey,* 555 N.E.2d at 152.

Here, the trial court stated at the sentencing hearing that it "considered the presentence report and the criteria for sentencing as set out in Indiana Code 35–38–1–7.1." (R. 589). The trial court then imposed sentence on Shackelford, stating that it would file a written Reasons for Sentence Imposed. The Reasons for Sentence Imposed filed by the trial court is a preprinted form that states that the trial court has considered the "risk that the defendant will commit another crime, the nature and circumstances of the crime committed, the prior criminal record, character and condition of the defendant, whether the victim of the crime was less than twelve (12) years of age or at least sixty-five years of age, and those mitigating and aggravating circumstances checked below...." (R. 108). This language tracks the language of I.C. 35–38–1–7.1 setting forth what the trial court shall consider when determining what sentence to impose. The remainder of the Reasons for Sentence Imposed document is a listing of the statutorily provided aggravating and mitigating factors that the trial court may consider.

Here, the trial court checked under "Mitigating circumstances" item number 6: "the person has no history of delinquency or criminal activity, or he has led a law-abiding life for a substantial period before commission of the crime" and item number 10: "Imprisonment of the person will result in undue hardship to himself or his dependents." Under "Aggravating circumstances," the trial court checked the following:

3. The person is in need of correctional or rehabilitative treatment that can best be provided by commitment of the person to a penal facility;

4. Imposition of a reduced sentence or suspension of the sentence and imposition of probation would depreciate the seriousness of the crime; and

5. The victim of the crime was less than twelve (12) years of age or at least sixty-five (65) years of age.

The trial court also included a statement that application of the Sentencing Guidelines indicated the sentence should be enhanced to fifteen years.

While we cannot say here that the trial court did no more than "perfunctorily recite" the statutory considerations, the findings by the trial court are not sufficient to support enhancement of the sentence imposed. Nothing in the trial court's Reasons for Sentence Imposed reveals the evidence considered by the trial court in determining that mitigating or aggravating circumstances exist. Nothing in the document relates the statutory considerations specifically to Shackelford or to the facts of the crimes committed by Shackelford. For instance, the trial court does not state (1) *how* incarceration will work a hardship on Shackelford's family, (2) whether Shackelford had *no* criminal history or merely lived a law-abiding life for several years before commission of the crimes, (3) *why* Shackelford would be best served by treatment in a penal facility, or (4) whether the victims in this case were in fact under twelve (12) years of age or over sixty-five (65) years of age.

Because the trial court's sentencing statement is insufficient to support enhancement of the sentence, we remand the case to the trial court for a more specific statement or for the imposition of the presumptive sentence. *See Robey*, 555 N.E.2d at 150.

■ Shackelford also raises the issue whether the trial court improperly considered the age of the victims as an aggravating factor because the age of the victims was an element of the offenses. A fact which comprises a material element of the crime may not also constitute an aggravating circumstance to support an enhanced sentence. *Stewart v. State* (1988), Ind., 531 N.E.2d 1146, 1150. The trial court may, however, consider the particularized circumstances of the factual elements as aggravating factors. *Id.* Thus, in *Stewart* the court held that where the trial court "noted that the victim was not only a minor, but one of tender age, he was handicapped, and appellant's acts caused the children serious harm," the comments showed particularized individual circumstances constituting aggravating factors separate from just the age of the victim. *Id.* The trial court here did not make that type of showing; it merely checked the preprinted statement that the victim was under the age of twelve or over the age of sixty-five. On remand, the trial court may not consider merely the victim's age as an aggravating factor.

■ Shackelford also raises the issue whether the trial court erroneously considered as an aggravating factor that imposition of a reduced sentence would depreciate the seriousness of the crime. The court's determination that a reduced sentence would depreciate the seriousness of the crime is improper unless the court is considering reducing the sentence. *Shoup v. State* (1991), Ind.App., 570 N.E.2d 1298, 1306, *trans. denied.* Thus, on remand, the trial court may not consider this factor to support enhancement of the sentence.

The convictions of child molesting and incest as they relate to J.S. in Counts I and III are affirmed. The convictions of child molesting and incest as they relate to N.S.

in Counts II and IV are reversed. The case is remanded to the trial court for a more specific individualized statement of the proper aggravating factors in support of the enhanced sentence or for imposition of the presumptive sentence.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.

SHARPNACK, C.J., and MILLER, J., concur.